IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **ANITRA DIAMOND and LEBARRON YATES, individually and on behalf of all others similarly situated,** | *<br>*<br>*<br>* |
| **Plaintiffs,** | *<br>* |
| vs. | * Civil Action No.: 1:15-CV-00204-KD-C<br>* |
| **KIMBERLY HASTIE, in her individual capacity; NICK MATRANGA as the Mobile County License Commissioner and a Mobile County employee; et al.,** | *<br>*<br>*<br>*<br>* |
| **Defendants.** | * |

## MOTION TO DISMISS

Nick Matranga, the Mobile County License Commissioner, substituted[1] as defendant pursuant to Fed. R. Civ. P. 25(d) for Plaintiffs' claims against Kimberly Hastie in her official capacity as the former Mobile County License Commissioner, moves this Court, pursuant to Rule 12(b)(1) and (6), to dismiss the Complaint for lack of jurisdiction and for failure to state a claim.

## INTRODUCTION AND FACTUAL BACKGROUND

The Complaint alleges claims on behalf of Anitra Diamond and Lebarron Yates for themselves and on behalf of similarly situated putative class members for monetary damages against the former Mobile County License Commissioner, Kimberly Hastie, "in her personal and

---

[1] On October 1, 2015, Kimberly Hastie assumed the office of Mobile County Revenue Commissioner. Also on October 1, 2015, Nick Matranga assumed the office of Mobile County License Commissioner. Pursuant to Federal Rule of Civil Procedure 25(d), Matranga as the current License Commissioner is the proper defendant for the Plaintiffs' official capacity claim. *Kentucky v. Graham*, 473 U.S. 159, 166 n. 11 (1985) ("In an official-capacity action in federal court, death or replacement of the named official will result in automatic substitution of the official's successor in office.") (quoting Fed. R. Civ. P. 25(d)).

official capacity pursuant to 42 U.S.C. § 1983, *et seq.* . . . and pursuant to 18 U.S.C. § 2721." (Doc. 1, ¶ 1). The Complaint alleges: "Defendant Hastie was acting in an official capacity and within the course and scope of her employment[2] with Mobile County as the Mobile County License Commissioner. Plaintiffs seek judgment against Hastie for monetary damages in her individual and official capacity for acts taken under color of state law . . ." (Doc. 1, ¶ 5).

>The Complaint alleges that Hastie instructed an employee of the License Commission to:

>run a search of motor vehicle records and obtain the Personal Information, specifically email addresses, of all Mobile County residents who lived within the city limits of Mobile, and whose information had been gathered when said residents were obtaining/renewing licenses or motor vehicle permits/tags, and to place that Personal Information on a thumb drive. Defendant Hastie's conduct in accessing, obtaining, disclosing and/or using the Plaintiffs' and the Class Members' motor vehicle records violated 18 U.S.C. § 2724(a). Hastie was the official at the License Commission with final decision making authority and she ratified the illegal action.

(Doc. 1, ¶ 16). The Complaint alleges that Hastie's conduct violated the Drivers Privacy Protection Act, 18 U.S.C. § 2721 *et seq.* ("DPPA") and demands damages pursuant to 18 U.S.C. § 2724 for Plaintiffs and the putative class members for actual damages, but not less than liquidated damages in the amount of $2,500 per individual, plus attorney's fees. (Doc. 1, ¶¶ 25, 26).

The Complaint also demands monetary damages and attorney's fees and costs pursuant to 42 U.S.C. § 1983 and alleges that Hastie's conduct "subjected Plaintiffs and Class Members to the deprivation of their rights of privacy secured to them by the DPPA and [is] therefore in

---

[2] The Complaint mischaracterizes the Mobile County License Commissioner as an employee of Mobile County in the style of the case and misstates that the License Commissioner is employed by the County. (Doc. 1, ¶ 5). The independently-elected Mobile County License Commissioner is a public official, not a county employee. As explained in this Motion, the Mobile County License Commissioner is a public official as defined by State law.

violation of 42 U.S.C. § 1983."[3]  (Doc. 1, ¶¶ 29, 31).  Finally, the Plaintiffs allege that they are similarly situated to other individuals and assert class action allegations for putative class members.  (Doc. 1, ¶¶ 32-39).

## ARGUMENT

The Complaint fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Pursuant to 28 U.S.C. § 2724, a civil claim under the DPPA can only be brought against a "person" as that term is defined under the DPPA.  The Mobile County License Commissioner ("MCLC"), as an officer or agent of the State department of motor vehicles, is not a "person" pursuant to the DPPA.  Accordingly, the claim against the MCLC for violation of the DPPA must be dismissed.  Further, the DPPA claim and the § 1983 claim against the MCLC are barred by the Eleventh Amendment and Article I, § 14 of Constitution of Alabama, as the MCLC is immune from such claims and thus this Court lacks jurisdiction. Fed. R. Civ. P. 12(b)(1).  Therefore, all of the official capacity claims against the MCLC should be dismissed.

**A.      The Mobile County License Commissioner is not a "person" under the DPPA.**

The DPPA provides a civil cause of action as follows: "A **person** who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court." 18 U.S.C. § 2724(a) (emphasis added).  The DPPA defines person as follows: "'person' means an individual, organization or entity, **but does not include** a State or agency thereof." 18 U.S.C. § 2725(2) (emphasis added).  Accordingly, the civil action provision of the DPPA does not apply to the State of Alabama or an

---

[3] The Complaint does not demand any prospective injunctive or declaratory relief, only damages for past conduct.

agency of the State of Alabama. The MCLC is an agency of the State of Alabama and is therefore not a "person" under the DPPA.

Claims against elected officials in their "official" capacity are claims against the entity they represent. *See Vinson v. Clarke Cnty*., 10 F. Supp. 2d 1282, 1298 (S.D. Ala. 1998*). See also Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) ("Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent. . . . an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity. Thus, . . . a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.") (internal citations and quotation marks omitted, emphasis in original).

**1. Alabama law defines the Mobile County License Commissioner as a state agent.**

The Alabama Supreme Court has consistently held that county officials who collect money on behalf of the State as a function of the State are state agents. A county license inspector directed and supervised by the Alabama Department of Revenue is an agent of the State for the purpose of collecting and enforcing the state business-license tax. *Ex parte Tuscaloosa Cty.*, 796 So. 2d 1100, 1103-06 (Ala. 2000). Additionally, the Alabama Supreme Court has ruled that county officials and employees carrying out the function of the Department of Public Safety are agents of the Department of Public Safety for the purpose of collecting and transmitting applications and fees for the issuance of original or renewal driver's licenses. *Rutledge v. Baldwin County Com'n*, 495 So. 2d 49, 53 (Ala. 1986). See also *Hayden v. Alabama Dep't of Public Safety*, 506 F. Supp. 2d 944, 950 (M.D. Ala. 2007) (dismissing official capacity claims against officers of the Department of Public Safety).

The MCLC collects taxes and fees for the Alabama Department of Revenue, distributes taxes and fees to the State under authority granted by the Department of Revenue, and collects and sends license and registration information to the Department of Revenue. Ala. Code § 40-12-240 *et seq.*  These facts demonstrate that the MCLC is an agent of the State, similar to the county license inspector in *Ex parte Tuscaloosa County*, 796 So. 2d at 1103, and the county agent of the Department of Public Safety in *Rutledge*, 495 So. 2d at 53.

Further, Alabama statutory law clearly labels the license commissioner as an agent of the State:

> (a) Each judge of probate, **commissioner of licenses**, director of revenue, or other county official in this state authorized and required by law to issue motor vehicle license tags **shall by virtue of his or her office be a designated agent of the [Alabama] department [of Revenue]**.  Judges of probate, commissioners of licenses, directors of revenue, or other county officials may perform their duties under this chapter either personally or through any of their deputies.

Ala. Code § 32-8-34 (emphasis added); Ala. Code § 32-8-2 (3) (defining "department" as the Alabama Department of Revenue).  The Department of Revenue is undisputedly a state entity. Ala. Code § 40-2-1; *State v. Tuskegee Univ.*, 730 So. 2d 617, 619 (Ala. 1999) ("There is no question that the Department of Revenue is an administrative agency of the State of Alabama."). "Designated Agent" is also defined by Alabama statutory law to include the License Commissioner:

> (4) DESIGNATED AGENT.  Each judge of probate, **commissioner of licenses**, director of revenue, or other county official in this state authorized and required by law to issue motor vehicle license tags, who may perform his or her duties under this chapter personally or through his or her deputies, or other such persons located in this state, as the department may designate…

Ala. Code § 32-8-2 (4) (emphasis added).

5

Alabama statutory law further describes the various powers and duties of the license commissioners.  *See, e.g.,* Ala. Code § 32-8-6 (delineating the fees to be remitted to the Department); Ala. Code § 32-8-35 (directing information that the Department requires the license commissioner to obtain); Ala. Code § 32-6-61 (setting a schedule for license renewals); Ala. Code § 40-12-318 (directing certain fees and money collected by license commissioner to be paid to the Department); Ala. Code § 40-12-313 (directing license commissioner to furnish the Department with a list of all licenses issued); Ala. Code § 40-12-2 (directing the division of business license proceeds with the Department).

Thus, pursuant to Alabama law, the MCLC is an agent of the State and therefore not a "person" as defined by the DPPA.

> **2. The criminal conviction of Kimberly Hastie is further proof that the Mobile County License Commissioner is an agent, officer, or employee of the State Department of Motor Vehicles.**

Based upon the same alleged conduct which is the subject of Plaintiffs' Complaint, Kimberly Hastie was convicted of violating 18 U.S.C. § 2721(a) of the DPPA, which states: "A State department of motor vehicles, and any officer, employee, or contractor thereof, shall not knowingly disclose . . . personal information . . . ."  18 U.S.C. § 2721(a). *See United States v. Hastie*, 854 F.3d 1298, 1302 (11th Cir. 2017) (petition for rehearing en banc denied June 23, 2017).  Hastie's conviction under the DPPA proves that the MCLC is an officer or employee of the State department of motor vehicles, an agency of the State.  On this point, the Eleventh Circuit summarized pertinent factual findings from Hastie's criminal trial proving that the MCLC is an agency of the State:

> The government presented sufficient evidence to support the jury's verdict that Hastie was an "officer, employee, or contractor" of "[a] State department of motor vehicles" under the Act. 18 U.S.C. § 2721(a). . . .

> Specific testimony addressed the relationship between the Mobile County License Commission and the State of Alabama. For example, the jury heard evidence that some of the responsibilities of the License Commission as "a collection and disbursal agency" were defined by statute. The jury also heard testimony that the State oversaw aspects of the License Commission; for example, the state revenue commissioner sometimes played a management role, and the License Commission was subject to state ethics training. And the jury could have found that the Commission determined that it was subject to the Act because it included a statement about the Act on its website and in its policy manual.
>
> The jury could have found that the Mobile County License Commission acts for the State when it performs the traditional tasks associated with a state department of motor vehicles. . . . The License Commission issues driver's licenses and automobile titles and handles motor vehicle registrations for residents of Mobile County, responsibilities commonly known to be within the domain of state departments of motor vehicles. Driver's licenses and license plates allow drivers to operate their motor vehicles in the *State* of Alabama and allow individuals to comply with *state* laws. And the Mobile County License Commission remits fees to the State and implements state laws about vehicle registration. *See, e.g.*, Ala. Code § 32–6–61 (1975) ("All persons who acquire a motor vehicle which is located in this state and required to be registered in this state ... shall reregister the vehicle with the ... county official authorized and required by law to issue license plates."); § 32–9–3 ("Any ... state or county license inspectors and their deputies ... shall be authorized ... to enforce the provisions of this chapter."); *cf. Ex parte Tuscaloosa Cty.*, 796 So.2d 1100, 1106 (Ala. 2000) (explaining that under Alabama law, a county official "was acting as an agent of the state for purposes of enforcing the state's business-license laws"). Hastie collected the personal information of drivers as a prerequisite to these transactions traditionally associated with a department of motor vehicles.

*United States v. Hastie*, 854 F.3d 1298, 1302 (11th Cir. 2017) (emphasis in original, citations omitted).

Hastie's conviction for violating 18 U.S.C. § 2721 was therefore necessarily premised on a finding that the MCLC is as an officer or agent of the State Department of Motor Vehicles such that the MCLC cannot be a "person" under the DPPA pursuant to 28 U.S.C. §§ 2724; 2725(2).[4]

---

[4] The full statutory framework of the DPPA clearly establishes that the civil cause of action provided by the DPPA was not intended by Congress to apply against an officer or agency of the State, inasmuch as the DPPA has a separate civil penalty for violation of the DPPA by the State which can only be imposed by the Attorney General. 18 U.S.C. § 2723(b) ("Any State department of motor vehicles that has a policy or practice of substantial noncompliance with this

7

For these reasons, the official capacity claims against the MCLC fail to state a claim upon which relief can be granted and should be dismissed. Fed. R. Civ. P. 12(b)(6). *See Nat'l Ass'n of Bds. of Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga.*, 633 F.3d 1297, 1304 (11th Cir. 2011); *Barr v. Gee*, 437 Fed. App'x. 865, 874 (11th Cir. 2011).

**B.      The Mobile County License Commissioner is immune from Plaintiffs' claims.**

Plaintiffs' official capacity claims against the MCLC should also be dismissed because the MCLC is entitled to Eleventh Amendment immunity from suit as an arm of the State. Immunity issues should be resolved at the earliest possible stage in litigation. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009) ("[W]e repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation.") (citations omitted). Pursuant to the Eleventh Amendment, the MCLC is immune from all of Plaintiffs' official capacity claims for monetary damages and this Court lacks jurisdiction over those claims.

The Eleventh Amendment constitutes an "absolute bar" to a state being sued by its own citizens. *Dekalb County Sch. Dist. v. Schrenko*, 109 F.3d 680, 687 (11th Cir. 1997) (citations omitted). This bar applies equally to suits against state officials sued in their official capacities. *Johnson v. Folks*, 2014 WL 524602, at *3-4 (S.D. Ala. Feb. 7, 2014) ("[I]t is clear that the defendants are . . . state officials entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. Thus, the defendants are entitled to absolute immunity from any claims for monetary relief presented against them in their official capacities.") (citations and quotations omitted). *See also Simmons*

---

chapter shall be subject to a civil penalty imposed by the Attorney General of not more than $5,000 a day for each day of substantial noncompliance."). Other courts have held that this separate provision is further evidence that a State or State agency is not liable under the civil provision of the DPPA when the multiple sections of the DPPA are read together. *See Engebretson v. Aitkin County,* No. 14-1435 ADM/FLN, 2016 WL 5400363 at *1, n. 2 (D. Minn. Sept. 26, 2016).

*v. Conger*, 86 F.3d 1080, 1085 (11th Cir. 1996); *Pears v. Mobile County*, 645 F. Supp. 2d 1062, 1078 (S.D. Ala. 2009).

It is also well-settled that Eleventh Amendment immunity bars suits brought in federal court when an "arm of the State" is sued. *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 280 (1977)). To receive Eleventh Amendment immunity, the MCLC need not be labeled a "state officer" or "state official," but instead need only be acting as an "arm of the State," which includes agents and instrumentalities of the State. *Id.* There are four factors to determine whether the MCLC is an "arm of the State": (1) how state law defines the MCLC; (2) what degree of control the State maintains over the MCLC; (3) where the MCLC derives its funds; and (4) who is responsible for satisfying judgments against the MCLC. *Id.* at 1309. Following is an analysis which applies the four *Manders* factors to the facts in this case.

   **1. Alabama law defines the License Commissioner as agent of the State.**

As described in Section A.1 *supra,* Alabama statutory law defines the office of the license commissioner as a designated agent of the Alabama Department of Revenue. Ala. Code §§ 32-8-2(4), 32-8-34. Being labeled the "county" license commissioner does not mean that the MCLC is not an arm of the state and not protected by the Eleventh Amendment. *See Manders*, 338 F.3d at 1312 (term county officer reflected geographic territory where sheriff is elected and operated but it is "entirely consistent" for "county officers" to be independent of the county government and subject to state, not county control). *See also Kicklighter v. McIntosh Cty. Bd. Of Comm'rs*, 2017 WL 2492033 at *2 (11th Cir. June 9, 2017) (same). In the criminal case against Hastie, the Eleventh Circuit determined that the MCLC collected the alleged personal information at issue in this case through the application and renewal process for driver's licenses

in fulfillment of her duties as an agent of the State. *See United States v. Hastie,* 854 F.3d at 1302 ("Hastie collected the personal information of drivers as a prerequisite to these transactions traditionally associated with a department of motor vehicles."). The MCLC is therefore an arm of the state based upon the first *Manders* factor and is entitled to immunity.

### 2. The State exercises extensive control over the License Commissioner.

Alabama statutes extensively define the duties and obligations of the MCLC. The license commissioner (1) issues all drivers' licenses, driving permits and identification cards for non-drivers; (2) records vehicle titles and title transfers; (3) arranges inspections of new vehicles for titles; (4) issues all motor vehicle tags; (5) assesses and collects ad valorem taxes on motor vehicles and boats; (6) collects general and sales tax; and (7) collects the revenue derived from all registrations and tag issuances for the Department of Revenue. *See generally* Alabama Code Title 32, Chapter 8 and Title 40, Chapter 12.[5] State law determines the fee that the License Commissioner can collect from the issuance of licenses. Ala. Code § 40-12-271. The County cannot control the actions of the License Commissioner's office and cannot remove a License Commissioner from office. *See* Ala. Code § 40-1-28 (officers of the Department of Revenue subject to removal by impeachment). The Department of Revenue has complete control over tax collectors and assessors, including license commissioners, and the license commissioner is directly supervised by the Department of Revenue. Ala. Code § 40-2-11(1).

Based upon the fact that the duties and obligations of the license commissioner's office are defined by State law, the MCLC collects revenues and sales tax on behalf of the Alabama Department of Revenue, the Department of Revenue supervises the MCLC, and the lack of any

---

[5] A non-exhaustive list of Alabama statutes defining the responsibilities of the MCLC and illustrating the control of the State over the MCLC is also included in Section A.1 *supra.*

control of the MCLC by the County, the second *Manders* factor supports immunity of the MCLC as an arm of the State.

### 3. State law mandates that the County fund the License Commissioner's office.

Mobile County provides funding for the MCLC's office.  However, funding by the County is mandated by State law, which is sufficient state involvement to tilt the third *Manders* factor in favor of immunity of the MCLC. *Manders*, 338 F. 3d at 1323-24.  *See also Pellitteri v. Prine*, 776 F.3d 777, 782 (11th Cir. 2015); *Kicklighter*, 2017 WL 2492033 at *6-7; *Ross v. Jefferson Cty. Dep't of Health*, 701 F.3d 655, 660 (11th Cir. 2012). In *Pellitteri*, the county was the major source of funding for a county sheriff's office, including the salaries of his deputies. 776 F.3d at 782.  However, the State of Georgia required counties to set the sheriff's budget and the county could not dictate the way the sheriff used that budget.  *Id*.  In *Ross*, Alabama state law required the county to fund the Health Department, pay the salary of the Health Officer, and provide an office for the Health Department. *Ross*, 701 F.3d at 660.  In both cases, in addition to the *Manders* case, the Eleventh Circuit looked past the signer of the checks and instead to state law mandating that the county fund the office to determine that the entity is an "arm of the state" and therefore entitled to immunity.

Alabama statutory law mandates that the County provide certain funding to the MCLC, including salary, expenses, office personnel, equipment, supplies, and other aspects of the license commissioner's office for the MCLC. State law also requires that the license commissioner is paid from the county general fund at a specific salary, Ala. Code § 40-6A-2, and the county must provide an expense allowance.  Ala. Code §§ 11-2A-2, 11-2A-3, 11-2A-4, 11-2A-5, 40-6A-2. *See also, generally*, Ala. Code §§ 40-6A-1 thru 40-6A-8 and 11-2A-1 thru 11-2A-8.  Pursuant to Alabama statute, the county must also provide office personnel, clerks, deputies, an office,

11

books, stationery, furniture, and equipment, among other things. Ala. Code § 40-6A-5. Finally, the county must reimburse the license commissioner for dues, fees, and expenses related to "membership in and/or attendance **at official functions <u>of their state organizations</u>.**" Ala. Code § 11-1-11 (a). (emphasis added). Therefore, the extent of control by the State over the County's funding of the MCLC is similar to *Manders, Pellitteri,* and *Ross* and weighs heavily in favor of immunity of the MCLC as an arm of the State.

### 4. No Alabama statutory law clearly requires the State or the County to pay a judgment against the Mobile County License Commissioner.

Alabama law does not specify whether the State of Alabama or Mobile County would be responsible for satisfying any potential judgment against the MCLC. Thus, there is no basis for applying this *Manders* factor to the facts of this case. Nonetheless, even if Alabama law did expressly assign responsibility for any judgment against the MCLC to the County (which is <u>not</u> the case), "when the fourth factor is the only one weighing against finding that the entity is an arm of the state, the entity will, on balance, be entitled to Eleventh Amendment immunity." *Kicklighter*, 2017 WL 2492033 at *7 (citing *Pellitteri*, 776 F.3d at 783). *See also Manders,* 338 F.3d at 1328 (immunity is not limited to the entity that "foots the bill" and even though the State of Georgia was not statutorily required to pay a judgment against the county sheriff for a claim in his official capacity, the sheriff was entitled to Eleventh Amendment immunity).

Based upon the totality of the four *Manders* factors, the MCLC is immune from the DPPA claim.

### C. Plaintiffs' Section 1983 claim fails as a matter of law.

Likewise, Plaintiffs' § 1983 official capacity claim for monetary damages against the MCLC is barred by sovereign immunity and fails to state a claim. The United States Supreme Court has held that the definition of "person" under § 1983 does not include States or State

officials and that state immunity applies. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 68 (1989) ("We cannot conclude that § 1983 was intended to disregard the well-established immunity of a State from being sued without its consent…. [A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself."). *See also Hayden*, 506 F. Supp. 2d at 950 ("state official in his or her official capacity is not a 'person' within the meaning of § 1983."); *Chantilly Store All, LLC v. Spear*, No. 2:09-cv-921-MEF-CSC 2010 WL 3269131 (M.D. Ala. Oct. 22, 2010) (official capacity claims against county revenue commissioner dismissed because county revenue commissioner was not a "person" under § 1983).[6]

Accordingly, because the MCLC is an arm of the state and entitled to immunity, Plaintiffs' § 1983 official capacity claim is likewise due to be dismissed.  *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (Eleventh Amendment bars § 1983 claims for damages against state officials in their official capacity);  *Taylor v. Dept. of Public Safety*, 142 Fed. App'x 373, 374-75 (11th Cir. 2005) (affirming dismissal of § 1983 claim against state agency); *Robinson v. Georgia Dept. of Transp.*, 966 F.2d 637, 640 (11th Cir. 1992) ("Congress, in passing § 1983, did not intend to override the immunity guaranteed to the states by the Eleventh Amendment."); *Taylor v. Adams*, 221 F.3d 1254, 1256 (11th Cir. 2000) ("In their official capacity, however, Alabama sheriffs operating jails are state officers protected by Eleventh Amendment Immunity from § 1983 actions."); *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1527 (11th Cir. 1990) (extending Alabama sheriff's Eleventh Amendment immunity to Alabama deputy sheriffs).  *See*

---

[6] The Supreme Court's definition of "person" to the exclusion of States and state officials in their official capacity under § 1983 claims is similar to the DPPA's exclusion of States from its definition of "person." 28 U.S.C. § 2725(2).  Presumably, the justification for both definitions of "person" is to preserve the immunity of States and state agents or arms of the State from monetary damages.

also *Poindexter v. Dep't of Human Res.,* 946 F. Supp. 2d 1278, 1284 (M.D. Ala. 2013) (dismissing § 1983 claim against Alabama state department and state personnel board) (citing *Pennhurst St. Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984)).

WHEREFORE, based on the foregoing, the Mobile County License Commissioner respectfully moves the Court to dismiss the official capacity claims against him with prejudice, and award any other further relief that may be appropriate.

Respectfully submitted,

*/s/ Christopher S. Williams*
J. BURRUSS RIIS (RIISJ8057)
DOUGLAS L. MCCOY (MCCOD5015)
CHRISTOPHER S. WILLIAMS (WILLC7030)
Attorneys for Nick Matranga in his official capacity as the Mobile County License Commissioner
HAND ARENDALL LLC
P.O. Box 123
Mobile, AL 36601-0123
Tel:   (251) 432-5511
Fax:   (251) 694-6375
briis@handarendall.com
dmccoy@handarendall.com
cwilliams@handarendall.com

## **CERTIFICATE OF SERVICE**

      I do hereby certify that, on July 28, 2017, I filed the foregoing pleading with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Kasie M. Braswell
D. Brian Murphy
Braswell Murphy, LLC
59 Saint Joseph Street
Mobile, AL 36602

Archie I. Grubb, II
Wilson Daniel "Dee" Miles, III
Beasley, Allen, Crow, Methvin, Portis & Miles
218 Commerce Street
Montgomery, AL 36104

Joe Carl "Buzz" Jordan
As attorney for Kimberly Hastie, individually
Buzz Jordan, Attorney
1111 Dauphin Street
Mobile, AL 36604

                              */s/ Christopher S. Williams*

3216340_2