**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **ANITRA DIAMOND and LEBARRON** | * | |
| **YATES, individually and on behalf of all** | * | |
| **others similarly situated,** | * | |
| | * | |
| **Plaintiffs,** | * | |
| | * | |
| **vs.** | * | **Civil Action No.: 1:15-CV-00204-KD-C** |
| | * | |
| **KIMBERLY HASTIE, in her individual** | * | |
| **and official capacity as the Mobile County** | * | |
| **License Commissioner and a Mobile** | * | |
| **County employee at all times relevant to** | * | |
| **the events described herein; and NICK** | * | |
| **MATRANGA, in his official capacity as the** | * | |
| **current Mobile County License** | * | |
| **Commissioner and a Mobile County** | * | |
| **employee,** | * | |
| | * | |
| **Defendants.** | * | |

**REPLY TO PLAINTIFFS' RESPONSE**
**TO DEFENDANT'S MOTION TO DISMISS**

Nick Matranga, as the Mobile County License Commissioner ("Matranga") files this Reply to the Plaintiffs' Response to Defendant's Motion to Dismiss (Doc. 38) (hereinafter "Plaintiffs' Response"). The Mobile County License Commissioner is an arm of the State and therefore Matranga is entitled to Eleventh Amendment immunity for the claims in this case. However, the Court need not address this secondary argument because the Mobile County License Commissioner ("MCLC") is an agent of the State of Alabama and therefore not a person subject to a civil claim under the Drivers Privacy Protection Act ("DPPA"). Plaintiffs' claims pursuant to the DPPA and § 1983 fail to state a claim upon which relief can be granted and should be dismissed.

**A.  The Mobile County License Commissioner is not a "person" under the DPPA.**

Plaintiffs' Response to section "A" of the Motion to Dismiss[1] utterly misses the mark. Plaintiffs' Response either ignores or misconstrues the first important and independent ground upon which Matranga's Motion to Dismiss is based.  More specifically, while Plaintiffs' Response focuses exclusively on immunity, the first ground for dismissal of Plaintiffs' claims is based strictly upon the language of the DPPA.  The civil action provision of the DPPA says that a "person" who "knowingly obtains, discloses or uses personal information, from a motor vehicle record . . . shall be liable …" 18 U.S.C. § 2724(a).   In defining a "person" under the DPPA, the Act expressly excludes "a State or agency thereof." 18 U.S.C. § 2725.  This independent argument has nothing to do with immunity (*See* Plaintiffs' Response at 2-9) but rather, is an argument based strictly upon statutory interpretation.  Plaintiffs' failure to grasp, or their effort to obfuscate, the first and independent argument for dismissal of Plaintiffs' claims is most clearly illustrated by two points.

First, Plaintiffs discuss cases cited by Matranga, including *Ex parte Tuscaloosa Cty.*, *Ruledge v. Baldwin County Com'n*, and *Hayden v. Alabama Dep't of Public Safety*, and conclude that these cases demonstrate that "state-agent immunity" is inapplicable to this case. (Plaintiffs' Response at 2-5)  Matranga cited these cases, not for "state-agent immunity" but to show Alabama case law supporting the MCLC as an agent of the State of Alabama to prove that the MCLC is not

---

[1] Matranga's Motion to Dismiss is based upon state and federal case law, statutes, and other legal authority. Reliance on such legal authority does not convert this Motion to Dismiss pursuant to Rule 12 into a motion for summary judgment pursuant to Rule 56, as legal authority is generally not considered "matters outside the pleadings" for purposes of Rule 12.  Furthermore, the Court can take judicial notice of state law without converting the Motion to Dismiss into a motion for summary judgment. *See U.S. ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 811 (11th Cir. 2015); *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1276-77 (11th Cir. 1999); *Lamar v. Micou*, 114 U.S. 218, 223 (1885) ("The law of any state of the Union, whether depending upon statutes or upon judicial opinions, is a matter of which the courts of the United States are bound to take judicial notice, without plea or proof.").

a "person" under the DPPA.  (*See* Matranga's Motion to Dismiss at 5-6).  To be clear: Matranga does not argue in Section "A" of the Motion to Dismiss that the Plaintiffs' claims should be dismissed because of "state-agent immunity."[2]  Rather, the first argument in the Motion to Dismiss, which was not rebutted in Plaintiffs' Response, was that the MCLC is a "state or agency thereof" pursuant to the DPPA, not a person under the DPPA, and therefore not subject to the civil liability provision under the DPPA.  *See* 18 U.S.C. § 2724(a).

The second glaring example of Plaintiffs' misinterpretation of Matranga's argument is shown by the title to Plaintiffs' argument related to Hastie's conviction: "Does the Criminal Conviction of Kimberly Hastie Outweigh Current Case-Law as it Relates to State-Agent Immunity?"  (Plaintiffs' Response at 7).  Again, Plaintiffs' focus on state-agent immunity is misguided.  Hastie's criminal conviction for violation of the DPPA required Hastie to be "an officer or employee" of a "State department of motor vehicles." *See* 18 U.S.C. § 2721; *United States v. Hastie*, 854 F.3d 1298, 1302 (11th Cir. 2017).  Her conviction proves that the MCLC, as an officer or employee of a State department of motor vehicles, cannot be a "person" under the DPPA civil claim because "person" does not include a state or agency thereof.  *See United States. v. Jean- Baptiste*, 395 F.3d 1190, 1195 (11th Cir. 2005) (a criminal conviction precludes re-litigation of the issues decided by that conviction in a later civil action if the issue in question is identical in both the prior and current action, the issue was actually litigated in the criminal trial, the determination of the issue was critical and necessary to the judgment in the prior action, and the burden of persuasion in the subsequent action is not significantly heavier);  *In re Bilzerian*,

---

[2] "State-agent immunity" does not apply to federal claims against Matranga in his official capacity.  *See Jones v. Buckner*, 963 F. Supp. 2d 1267, 1283 (N.D. Ala. 2013) ("However, *Gowens* dealt with state-agent immunity under Alabama law, which is only applicable against the Defendants in their *individual* capacity, not their *official* capacity.") (emphasis in original).   The second argument in Matranga's Motion to Dismiss is based upon sovereign immunity pursuant to the Eleventh Amendment and Article I, § 14 of the Constitution of Alabama, which is discussed in section "B" *infra*.

153 F.3d 1278, 1281 (11th Cir. 1998) (same); *Pension and Employee Stock Ownership Plan v. Patterson*, 547 F. Supp. 2d 1230, 1241-42 (N.D. Ala. 2008) (same); *Blohm v. Bradley*, 821 F. Supp. 1451, 1454 (S.D. Ala. 1993) (same).

Plaintiffs' Response points out that Alabama statute, while defining the license commissioner as an officer of the Alabama Department of Revenue pursuant to Alabama Code Title 32 Chapter 8, also defines the license commissioner as a "County taxing official" pursuant to Alabama Code § 11-2-1. Plaintiffs argue that Title 32 Chapter 8, known as the Alabama Uniform Certificate of Title and Antitheft Act, "specifically limits the terms of that code to that specific chapter." (Plaintiffs' Response at 6).[3] The Alabama Uniform Certificate of Title and Antitheft Act ("AUCTAA") provides for the powers and duties of the Department of Revenue related to title, security interests, licenses, license plates, tags, taxes, registrations, and fees for motor vehicles in the State of Alabama. *See* Ala. Code § 32-8-1 *et seq.* In fact, contrary to the argument in Plaintiffs' Response that gathering private information of Mobile County citizens is unrelated "in any way to the Uniform Certificate of Title and Antitheft Act" (Plaintiffs' Response at 7), the AUCTAA specifically prescribes information that owners of motor vehicles must provide to a "designated agent"[4] for registration of motor vehicles (a motor vehicle record) and the manner of disclosure by designated agents. *See* Ala. Code §§ 32-8-6(g); 32-8-35. Clearly the AUCTAA, and its definition of the license commissioner as an agent of the Department of Revenue,[5] is relevant to the claims in the Second Amended Complaint and closely linked to the Drivers Privacy

---

[3] Plaintiffs cite a provision of the Alabama Code called "Bond Requirements" which describes a license commissioner as a "County taxing official." Ala. Code § 11-2-1(a)(3). Ironically, the same language emphasized by Plaintiffs in Alabama Code § 32-8-2 is also included in Alabama Code § 11-2-1: "For the purposes of this chapter, the following words have the following meanings: . . . ." (*See* Plaintiffs' Response at 6).

[4] The AUCTAA defines a "designated agent" to include the "commissioner of licenses." Ala. Code § 32-8-2(4).

[5] As argued in the Motion to Dismiss, Alabama law is clear that the Department of Revenue is a state entity. *See* Motion to Dismiss at 6, citing Ala. Code § 40-2-1 and *State of Tuskegee Univ.*, 730 So. 2d 617, 619 (Ala. 1999).

Protection Act.    As the Eleventh Circuit observed, these title and tag responsibilities involve transactions "traditionally associated with a department of motor vehicles" *United States v. Hastie*, 854 F.3d at 1302, and therefore the AUCTAA is relevant to the DPPA.

In response to Matranga's argument that the MCLC is not a person under the DPPA, Plaintiffs appear to argue that the "particular function" of the MCLC determines whether the definition of "person" under the DPPA is met.  (Plaintiffs' Response at 2-7).  This argument is solely based upon a case analyzing Eleventh Amendment immunity.  (*See* Plaintiffs' Response at 2, quoting *Walker v. Jefferson County Board of Educ.*, 771 F.3d 748 (11th Cir. 2014)).    Again, immunity has nothing to do with Matranga's argument that the MCLC is not a "person" pursuant to the DPPA civil action.  Plaintiffs do not cite, and Matranga is unaware of any authority that says that the definition of a "person" under the DPPA, which does not include a State or agency thereof, is subject to an analysis of whether certain conduct is a function of the State.

Even if such "function" requirement applied to the definition of "person" under the DPPA, Hastie was convicted for the same conduct the subject of the Second Amended Complaint after this Court, a jury, and the Eleventh Circuit Court of Appeals determined that the MCLC was an "officer, employee, or contractor" of a "State department of motor vehicles."  *See United States v. Hastie*, 854 F.3d at 1302.  Plaintiffs' argument is basically that Hastie was not an agent of the State for purposes of the DPPA civil claim even though Hastie had to be an officer of the State for the same conduct to be subject to conviction under the DPPA.   Plaintiffs cite no legal support for this proposition, and this argument fails as a matter of law. *See United States. v. Jean- Baptiste*, 395 F.3d at 1195; *In re Bilzerian*, 153 F.3d at 1281; *Pension and Employee Stock Ownership*, 547 F. Supp. 2d at 1241-42; *Blohm*, 821 F. Supp. at 1454.

The statutory framework of the DPPA provides further proof that the MCLC is not subject to the civil penalty pursuant to 18 U.S.C. § 2724 because the MCLC is not a "person."   Pursuant to the DPPA, "Any State department of motor vehicles that has a policy or practice of substantial noncompliance with this chapter shall be subject to a civil penalty imposed by the Attorney General of not more than $5,000 a day for each day of substantial noncompliance."  18 U.S.C. § 2723(b).  Congress prescribed this separate civil penalty under the DPPA for a violation by a State department of motor vehicles, like the MCLC, which must be imposed by the Attorney General pursuant to 18 U.S.C. § 2723(b).  When all of the provisions of the DPPA are read together, the MCLC, as an agent of the State, cannot be a "person" pursuant to 18 U.S.C. § 2724.  *See Kiminski v. Hunt*, No. 13-185 (JNE/TNL), 2013 WL 6872425, * (D. Minn. Sept. 20, 2013) ("the structure of the DPPA signals that Congress did not intend the civil action provision to serve as the means to remedy systemic problems of the type to which the complaint alludes. The Act excludes 'a State or agency thereof' from the definition of 'person' and makes the civil remedy of 18 U.S.C. § 2724(a) available only against a 'person' who violates the Act.  The Act provides for the United States Attorney General to take action against and impose sanctions on state DMV's that have 'a policy or practice of substantial noncompliance' with the DPPA. 18 U.S.C. § 2723(b).  This provision for sanctions by the Attorney General indicates that Congress intended to address the concern that Plaintiffs attempt to raise here- of inadequate policies and practices at state DMV's to protect the privacy of drivers' personal information- via that mechanism.").  *See also Torraco v. Brodsky*, No. 8:15-CV-1964-T-23MAP, 2016 WL 4494494, * 2 (M.D. Fla. Aug. 26, 2016); *Margan v. Niles,* 250 F. Supp. 2d 63, 75 (N.D. N.Y. 2003).

At its core, the criminal conviction of Hastie required that the MCLC was an officer or employee of the State of Alabama department of motor vehicles.  Alabama statute defines the

license commissioner as an agent of the State of Alabama, Department of Revenue.  Alabama case law has held that a license inspector, and agents of the Department of Public Safety are agents of the State of Alabama.  The statutory definition of the DPPA does not require an inquiry into the conduct or "function" of an agent of the State to determine whether or not that State agent qualifies as a "person" under the DPPA.  And even if such requirement existed, the exact conduct the subject of the Second Amended Complaint was already determined to be conduct by an officer or employee of the State department of motor vehicles.  For these reasons, Plaintiffs' Second Amended Complaint against Matranga fails to state a claim upon which relief can be granted, and should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

### B.  The Mobile County License Commissioner is immune from Plaintiffs' claims.

Matranga, as the MCLC and an arm of the state, is entitled to sovereign immunity pursuant to the Eleventh Amendment and Article I, § 14 of the Constitution of Alabama.    As such, Plaintiffs' official capacity claims against Matranga fail to state a claim upon which relief can be granted, and/or this Court lacks jurisdiction over such allegations.  Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

Plaintiffs' Response describes the purported "control" by the county over the MCLC, repeatedly quotes cases that refused to extend sovereign immunity even when the entity exercised "a slice of state power," and misconstrues Alabama statutes to argue that the MCLC is not an arm of the state. (Plaintiffs' Response at 9-19).  Without providing any legal authority, Plaintiffs state that the "Mobile County License Commission is a legislative creation of Mobile County." (Plaintiffs' Response at 9).  This is demonstrably false, as the office of license commissioner is defined and created by State law pursuant to the Alabama Code.  *See generally* Alabama Code Title 11, Subtitle 1, Chapter 2A; Title 32, Chapter 8; and Title 40 Chapter 6A.

Under the first *Manders* factor, Plaintiffs rely upon Alabama Code § 11-2-1 to argue that Alabama law defines the MCLC as a "county taxing official."  (Plaintiffs' Response at 12).[6] However, Alabama statute, pursuant to the AUCTAA, also defines the MCLC as a designated agent of the Alabama Department of Revenue.  The Second Amended Complaint alleges claims related to information from "motor vehicle records" of individuals that were obtained or disclosed by the MCLC.  (Doc. 36 ¶¶ 28, 37, 52).  The gathering and disclosure of personal information from motor vehicle records by the MCLC is prescribed by Alabama law, including provisions of the AUCTAA.  *See* Ala. Code §§ 32-8-6(g), 32-8-35.  Accordingly, the function of the MCLC at issue in this case involves the AUCTAA, and the definition of the MCLC as a designated agent of the Alabama Department of Revenue applies to the first *Manders* factor.

Plaintiffs' Response focuses on a case from Texas, *Hartford Cas. Ins. Co. v. Price*, 435 F. Supp. 2d 566 (N.D. Tex. 2006) and notes that the case is "on-point for our situation."  (Plaintiffs' Response at 11, 14).  However, the *Price* case is far from "on-point."  The *Price* case was not decided within the Eleventh Circuit, so it does not apply the four *Manders* factors at issue in this case, but instead focuses on six factors pursuant to Fifth Circuit precedent, *Hudson v. City of New Orleans*, 174 F.3d 677 (5th Cir. 1999) and *Clark v. Tarrant County*, 798 F.2d 736 (5th Cir. 1986). *Price*, 435 F. Supp. 2d at 570.  Furthermore, when the Court in *Price* analyzed how Texas law defined the county tax assessor-collector, the Court specifically noted that "Defendant points to no

---

[6] As argued in the Motion to Dismiss, the fact that Matranga is the license commissioner of Mobile County and the MCLC is described as a "County taxing official" does not mean the MCLC cannot be entitled to immunity as an arm of the state.  *See Manders v. Lee*, 338 F.3d 1304, 1312 (11th Cir. 2003) ("county officer nomenclature necessarily reflects a geographic label defining the territory in which a sheriff is elected and mainly operates.  It is entirely consistent for sheriffs to be independent of the county government and to be subject to State, not county, control but to be called 'county officers' to reflect their geographic jurisdiction in the State.").  *See also Pellitteri v. Prine*, 776 F.3d 777, 780 (11th Cir. 2015).  Plaintiffs' argument distinguishing this point in *Manders*, because Georgia's Constitution makes the sheriff's office independent from the county, is unpersuasive in light of Alabama statutes describing the MCLC as a designated agent of the Alabama Department of Revenue and providing the control and oversight by the Alabama Department of Revenue.

statutes or cases that treat the county tax assess-collector as an arm of the state, rather than the county." *Price*, 435 F. Supp. 2d at 572.  In contrast, Matranga has cited ample Alabama authority which identifies the MCLC as an agent or arm of the state.  (*See* Motion to Dismiss at 5-6, 10 and *supra* "A").

Under the second *Manders* factor involving control by the State, and the third *Manders* factor regarding funding, Plaintiffs' Response argues that the MCLC is not under "sufficient control of the State of Alabama" and cites various examples of purported control by Mobile County over the MCLC.  (Plaintiffs' Response at 14-18).  Plaintiffs' examples regarding budgets, holidays, employees, and other involvement by the County with the MCLC (Plaintiffs' Response at 15-16) conveniently overlook the fact that most of the examples listed are determined **by State law pursuant to the Alabama Code.**  *See* Ala. Code § 11-2A-2 *et seq.* (setting expense allowance of license commissioners); Ala. Code § 40-6A-2 (setting salary of license commissioner); Ala. Code § 40-6A-5 (requiring County to provide support personnel, equipment, furniture, supplies, and office space); Ala. Code §§ 11-1-8 and 1-3-8 (prescribing when county commission can close offices for "legal holidays" pursuant to State law and prescribing type of notice required for closure).  When State law mandates the county's involvement in the MCLC, relying on that involvement to argue "control" by the county instead of the State is unconvincing.  *See Pellitteri v. Prine*, 776 F.3d 777, 782 (11th Cir. 2015); *Ross v. Jefferson Cty. Dep't of Health*, 701 F.3d 655, 660 (11th Cir. 2012); *Manders v. Lee*, 338 F.3d 1304, 1323 (11th Cir. 2003).

Plaintiffs also neglect to address a crucial example of control by the State over the MCLC pursuant to Alabama Code § 40-2-11(1): "It shall be the duty of the Department of Revenue, and it shall have the power and authority . . . : (1) To have and exercise **general and complete supervision and control** of the valuation, equalization, and assessment of property, privilege, or

9

franchise and of the collection of all property, privilege, license, excise . . . or other taxes for the state and counties, and of the enforcement of the tax laws of the state, and of the several county tax assessors and county tax collectors, probate judges, and each and every state and county official, board, or commission charged with any duty in the enforcement of tax laws. . .". (emphasis added). *See also Chantilly Store All, LLC v. Spear*, No. 2:09-cv-921, 2010 WL 4269131 * 5-6 (M.D. Ala.  Oct. 22, 2010) ("Like all other tax collectors and assessors, the Montgomery County Revenue Commissioner is directly supervised by the Department of Revenue for the State of Alabama . . . Because the functions of the Revenue Commissioner are completely supervised by the State's Department of Revenue, the county has no responsibility or control over the administration of ad valorem taxes.").   Similarly, the County has no responsibility or control over the MCLC related to licenses, taxes, tags, or motor vehicle records.

Furthermore, pursuant to the AUCTAA, the Department of Revenue "shall prescribe and provide suitable forms of applications, certificates of title, notices of security interests, [motor vehicle records] and all other notices and forms necessary to carry out the provisions of this chapter" Ala. Code § 32-8-3(a); "shall provide each designated agent with the forms and rules and regulations provided for in this chapter" Ala. Code § 32-8-9; prescribes certain information collected by designated agents, Ala. Code § 32-8-35; provides for the disclosure of certain information by designated agents, Ala. Code § 32-8-6(g); and the Department is "charged with the enforcement of the provisions of this chapter" Ala. Code § 32-8-10.  Reviewing Title 32, Chapter 8, and Title 40, Chapters 2 and 12, the oversight, control, and day to day involvement of the Department of Revenue with the MCLC is clear.  Plaintiffs' Response fails to identify any example purportedly showing county control over or involvement with the collection or distribution of information from motor vehicle records by the MCLC.

10

Regarding the fourth *Manders* factor, Plaintiffs note the impetus for Eleventh Amendment immunity based upon the concern that a federal court judgment would have to be paid out of the state treasury. (Plaintiffs' Response at 18). The Second Amended Class Action Complaint seeks $2,500 for more than 30,000 individuals plus costs and attorney's fees. (Doc. 36 ¶¶ 40-47). If the Plaintiffs were able to certify the class and prevail on the allegations, a judgment in the case could exceed seventy-five million dollars against the MCLC. Considering the budgeting and financial obligations of the MCLC to the Alabama Department of Revenue, and the fact that as the Plaintiffs recognize, the MCLC is "required to remit funds to the state of Alabama" (Plaintiffs' Response at 17-18) pursuant to multiple provisions of Alabama law, "both county and state funds" could be "implicated" by a judgment in this case against the MCLC. *Manders*, 338 F.3d at 1329. This point was reiterated last month by the Eleventh Circuit Court of Appeals in denying a petition for rehearing en banc: "But *Manders* considered the same Georgia budgeting scheme and determined that 'the liability-for-adverse-judgment factor does not defeat' immunity because paying a judgment out of the budget of the sheriff's office 'implicates' 'both county and state funds.'" *Lake v. Skelton*, No. 15-13124, 2017 WL 4296582 * 3 (11th Cir. Sept. 28, 2017) (Pryor, J. denying petition for rehearing en banc) (internal citations and quotations omitted). A judgment in this case could "implicate" State funds, such that the fourth *Manders* factor also weighs in favor of the MCLC as an arm-of-the-state. As an arm-of-the-state, the MCLC has immunity from Plaintiffs' claims. Plaintiffs' claims against Matranga in his official capacity are due to be dismissed.

**C. Plaintiffs' Section 1983 claim fails as a matter of law.**

Plaintiffs' Response to Matranga's Motion to Dismiss the § 1983 official capacity claim simply argues that because Plaintiffs believe there is no immunity for the MCLC in this case then Matranga's arguments for dismissal of the § 1983 claim fails. First, as demonstrated *supra* and in

the Motion to Dismiss, the MCLC is an arm-of-the-state and therefore Matranga has immunity for the official capacity claims against him.  Second, the § 1983 claims against Matranga fail as a matter of law, regardless of immunity, because Matranga, as a designated agent of the Department of Revenue, is not a "person" under § 1983.  *See Will v. Michigan Dept. of State Police*, 391 U.S. 58, 68 (1989).  Contrary to Plaintiffs' argument in attempting to distinguish *Chantilly Store All*, the actions at issue in this case relate to the duties and functions of the MCLC.  (*See* "B" *supra* and *Hastie*, 854 F.3d at 1302 "Hastie collected the personal information of drivers as a prerequisite to these transactions traditionally associated with a department of motor vehicles.").  Further, the exact conduct at issue has already been determined to be an action by an "officer or employee" of a "State department of motor vehicles."  (*See* "A" *supra* and *Hastie*, 854 F.3d 1302).  Plaintiffs' § 1983 official capacity claims against Matranga fail as a matter of law.  *See Hayden v. Alabama Dep't of Public Safety*, 506 F. Supp. 2d 944, 950 (M.D. Ala. 2007); *Chantilly Store All*, No. 2:09-cv-921-MEF-CSC 2010 WL 3269131 (M.D. Ala. Oct. 22, 2010).

Respectfully submitted,

/s/ Christopher S. Williams
J. BURRUSS RIIS (RIISJ8057)
DOUGLAS L. MCCOY (MCCOD5015)
CHRISTOPHER S. WILLIAMS (WILLC7030)
Attorneys for Nick Matranga in his official capacity
as the Mobile County License Commissioner
HAND ARENDALL LLC
P.O. Box 123
Mobile, AL 36601-0123
Tel:    (251) 432-5511
Fax:    (251) 694-6375
briis@handarendall.com
dmccoy@handarendall.com
cwilliams@handarendall.com

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that, on October 4, 2017, I filed the foregoing pleading with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Kasie M. Braswell
D. Brian Murphy
Braswell Murphy, LLC
59 Saint Joseph Street
Mobile, AL 36602
Attorneys for Plaintiffs

Archie I. Grubb, II
Wilson Daniel "Dee" Miles, III
Beasley, Allen, Crow, Methvin, Portis & Miles
218 Commerce Street
Montgomery, AL 36104
Attorneys for Plaintiffs

Joe Carl "Buzz" Jordan
1111 Dauphin Street
Mobile, AL 36604
Attorney for Kimberly Hastie, individually

*/s/ Christopher S. Williams*

3282826_1