# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| ANITRA DIAMOND, *et al.*, | : |
|    Plaintiffs, | : |
| vs. | :    Civil Action No. 1:15-cv-00204-KD-C |
| KIMBERLY HASTIE, in her individual capacity, *et al.*, | : : |
|    Defendants. | : |

## REPORT AND RECOMMENDATION

This cause is before the Magistrate Judge for issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. Gen. L.R. 72(a)(2)(S), on Defendant Nick Matranga's, in his official capacity as the current Mobile County License Commissioner and a Mobile County employee, Motion to Dismiss Second Amended Class Action Complaint ("motion to dismiss"), (Doc. 37), which was filed on September 25, 2017. Upon consideration of the parties' pleadings, (Docs. 37, 38, 40, 47, 49, & 50), and those arguments presented at the hearing in regard to Defendant Matranga's motion to dismiss, (*see* Docs. 39 & 42), it is **RECOMMENDED** Defendant Matranga's motion to dismiss, (Doc. 37), be **GRANTED**.

## FACTUAL BACKGROUND

In August 2013, Defendant Kimberly Hastie, as the Mobile County License Commissioner (the "MCLC"), ordered an employee of the Mobile County License

Commission to access motor vehicle records and, then, gather the email addresses of Mobile County residents who resided within the City of Mobile limits. (Doc. 36, ¶¶ 21-22). Defendant Hastie, further, ordered the employee to place those email addresses on an electronic storage device, and the electronic storage device was provided to the campaign of a local political candidate, which information was used by the campaign to promote the local political candidate. (Doc. 36, ¶¶ 21-22).

## PROCEDURAL BACKGROUND

This class action was originally filed in this Court on April 14, 2015, by Plaintiffs Anitra Diamond and Lebarron Yates, who brought claims against Defendant Hastie, in her individual and official capacity as the MCLC and a Mobile County; Chad Tucker, in his individual and official capacity as a Strateco, LLC, employee; and Strateco, LLC. (Doc. 1). The plaintiffs' first claim was against all the defendants for violation of the Drivers' Privacy Protection Act, 18 U.S.C. § 2721, *et seq.*, (the "DPPA"), and their second claim was against Defendant Hastie for violation 42 U.S.C. § 1983. (Doc. 1, ¶¶ 12-31).

On May 8, 2015, the parties filed a joint motion to stay this matter pending a criminal matter that involved Defendant Hastie and included potentially similar issues, (Doc. 7), which the Court granted and stayed this matter until September 1, 2015, (Doc. 9). On August 20, 2015, Defendant Hastie filed a motion to extend the stay for nine (9) additional months based on her conviction for the "Prohibited Release and Use of Personal Information from State Motor Vehicle Records," in the criminal case, *United States v. Hastie*, Case No. 1:14-cr-00291-KD, and her intent to

appeal her conviction to the Eleventh Circuit Court of Appeals. (Doc. 10, ¶¶ 3-4). The Court granted Defendant Hastie's motion to extend the stay and stayed this matter until June 1, 2016. (Doc. 15, at 3). On May 23, 2016, Defendant Hastie filed another motion to extend the stay for an additional seven (7) months while her appeal of her criminal conviction was pending with the Eleventh Circuit. (Doc. 19, ¶ 5). The Court granted in part and denied in part Defendant Hastie's second motion to extend and stayed this matter until seven (7) days after the Eleventh Circuit's issuance of its mandate in her criminal matter. (Doc. 20). On July 3, 2017, the Eleventh Circuit issued its mandate in Defendant Hastie's criminal case, and this Court lifted the stay in this matter on July 11, 2017, and ordered Defendant Hastie to file her responsive pleading. (Doc. 21).

On July 28, 2017, Defendant Matranga, who was substituted as a defendant pursuant to Rule 25(d), Federal Rules of Civil Procedure, (hereinafter "FRCP" followed by the Rule number) because he assumed the office of MCLC on October 1, 2015, filed his Motion to Dismiss pursuant to FRCP 12(b)(1) and 12(b)(6). (Doc. 23). On July 31, 2017, Defendant Hastie filed her Answer. (Doc. 25). On August 18, 2017, the plaintiffs filed their First Amended Class Action Complaint as a matter of course, pursuant to FRCP 15(a)(1)(B), (Doc. 28), in which they brought claims against Defendant Hastie, in her individual and official capacity as the MCLC and a Mobile County employee, and Defendant Matranga, in his individual and official capacity as the current MCLC and a Mobile County employee, for violations of the DPPA and 42 U.S.C. § 1983, (Doc. 28, ¶¶ 32-52). On August 31, 2017, the plaintiffs

3

filed a notice of voluntary dismissal to dismiss without prejudice their claims against Defendant Matranga in his individual capacity, (Doc. 30), that the Court construed as a motion for leave to amend[1] their complaint, which the Court provisionally granted if the defendants did not file an objection, (Doc. 34).

The plaintiffs filed their Second Amended Class Action Complaint on September 22, 2017, (Doc. 36), in which they brought claims against Defendant Hastie, in her individual and official capacity as the MCLC and a Mobile County employee, and Defendant Matranga, in his official capacity as the current MCLC and a Mobile County employee, for violations of the DPPA and 42 U.S.C. § 1983, (Doc. 36, ¶¶ 32-54). On September 25, 2017, Defendant Matranga filed his Motion to Dismiss Second Amended Class Action Complaint, (Doc. 37), the plaintiffs filed their response in opposition, (Doc. 38), and Defendant Matranga filed his reply, (Doc. 40). The undersigned set Defendant Matranga's motion to dismiss for oral argument on October 12, 2017. (Doc. 39). Defendant Hastie filed her Answer to Plaintiffs' Second Amended Class Action Complaint on October 9, 2017. (Doc. 41).

Following oral argument in regard to Defendant Matranga's motion to dismiss, (Doc. 42), the undersigned ordered the parties to file supplemental briefing, (Doc. 43), which the parties submitted, (*see* Docs. 47, 49, & 50). On November 11,

---

[1] "Our circuit precedent dictates that [FRCP] 41 allows a plaintiff to dismiss all of his claims against a particular defendant; its text does not permit plaintiffs to pick and choose, dismissing only particular claims within an action. A plaintiff wishing to eliminate particular claims or issues from the action should amend the complaint under [FRCP] 15(a) rather than dismiss under [FRCP] 41(a)." *Campbell v. Altec Indus., Inc.*, 605 F.3d 839, 841, n.1 (11th Cir. 2010).

4

27, 2017, the plaintiffs filed their Motion for Leave to File Limited Surreply Brief to address arguments that were raised for the first time in Defendant Matranga's supplemental reply brief. (Doc. 51).

## STANDARD OF REVIEW

### FRCP 12(b)(6)

Pursuant to FRCP 12(b)(6) a defendant may move to dismiss a complaint on the basis that the plaintiff has failed to state a claim upon which relief may be granted. *See* FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' [*Twombly*, 550 U.S.] at 570, 127 S. Ct. [at] 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556, 127 S. Ct. [at] 1955."). Since a FRCP 12(b)(6) motion questions the legal sufficiency of a complaint, in assessing the merits of a FRCP 12(b)(6) motion, the court must assume that all the factual allegations set forth in the complaint are true. *See, e.g., United States v. Gaubert*, 499 U.S. 315, 327, 111 S. Ct. 1267, 1276, 113 L. Ed. 2d 335 (1991); *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990); *but see also Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 ("[T]he tenet that a court must

5

accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. [at] 1955."). Moreover, all factual allegations are to be construed in the light most favorable to the plaintiff. *See, e.g., Brower v. County of Inyo*, 489 U.S. 593, 598, 109 S. Ct. 1378, 1382, 103 L. Ed. 2d 628 (1989). Obviously, therefore, a district court may not resolve factual disputes when adjudicating a motion to dismiss. *Page v. Postmaster Gen. and Chief Exec. Officer of the U.S. Postal Serv.,* 493 F. App'x 994, 995 (11th Cir. 2012) (citing, among other cases, *Lawrence v. Dunbar,* 919 F.2d 1525, 1529 (11th Cir. 1990) (indicating that, under Rule 12(b)(6), the existence of disputed material facts precludes a district court from granting a motion to dismiss)). "'When considering a motion to dismiss . . . the court limits its consideration to the pleadings and all exhibits attached thereto.'" *Thaeter v. Palm Beach Cty. Sheriff's Office,* 449 F.3d 1342, 1352 (11th Cir. 2006), quoting *Grossman v. Nationsbank, N.A.,* 225 F.3d 1228, 1231 (11th Cir. 2000) (per curiam); *see also Reese v. Ellis, Painter, Ratterree & Adams, LLP,* 678 F.3d 1211, 1215-16 (11th Cir. 2012) ("Because the Ellis law firm's dunning letter and enclosed documents were attached to the Reeses' complaint as an exhibit, we treat them as part of the complaint for Rule 12(b)(6) purposes.").

## **FRCP 12(b)(1)**

[FRCP] 12(b)(1) motions to dismiss for lack of subject matter jurisdiction can be asserted on either facial or factual grounds. *Morrison v. Amway Corp.*, 323 F.3d 920 925 n.5 (11th Cir. 2003). Facial challenges to subject matter jurisdiction are based solely on the

6

allegations in the complaint. When considering such challenges, the court must, as with a [FRCP] 12(b)(6) motion, take the complaint's allegations as true. *Id*. However, where a defendant raises a factual attack on subject matter jurisdiction, the district court may consider extrinsic evidence such as deposition testimony and affidavits. *Id.*

*Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009).

## ANALYSIS

Defendant Matranga moves to dismiss Plaintiffs' claims against him pursuant to FRCP 12(b)(1) and (6). (Doc. 37, at 1). Defendant Matranga argues Plaintiffs' claim that Defendant Matranga violated the DPPA fails as a matter of law because the MCLC, as an officer or agent of the state department of motor vehicles, is not a "person" under the DPPA, and the Eleventh Amendment and Article I, § 14 of the Constitution of Alabama bar Plaintiffs' claims against Defendant Matranga. (Doc. 37, at 2 & 4).

The DPPA provides "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court." 18 U.S.C. § 2724. The DPPA defines a "person" as "an individual, organization or entity, but does not include a State or agency thereof." 18 U.S.C. § 2725.

The determination of whether the MCLC is an agency of the State of Alabama, and, therefore, not a "person" under the statutory definition provided in the DPPA involves a similar line of inquiry as the determination of whether the

7

MCLC is immune from Plaintiffs' claims as an arm-of-the-state under the Eleventh Amendment from Plaintiffs' claims; however, the Court will limit its analysis to whether the MCLC is entitled to Eleventh Amendment immunity. Dismissal based on a claim of immunity is jurisdictional in nature and should be analyzed pursuant to FRCP 12(b)(1), *see Bennett v. United States*, 102 F.3d 486, 488 n.1 (11th Cir. 1996) ("The FTCA operates as a limited waiver of the United States' sovereign immunity. *See, e.g., Lawrence v. Dunbar*, 919 F.2d 1525, 1528 (11th Cir. 199). Unless the United States may be held liable pursuant to the terms of the statute, the sovereign's immunity remains intact, and no subject matter jurisdiction exists. *Id.* [FRCP] 12(b)(1) . . . provides a vehicle for the dismissal of actions for lack of subject matter jurisdiction."), and the Court will treat Defendant Matranga's motion to dismiss as a facial challenge to the Court's subject matter jurisdiction and treat Plaintiffs' factual allegations as true.

"The Eleventh Amendment protects a State from being sued in federal court without the State's consent." *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984) ("[I]n the absence of consent[,] a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."); *Carr v. City of Florence*, 916 F.3d 1521, 1524 (11th Cir. 1990) ("Although the express language of the [Eleventh] [A]mendment does not bar suits against a state by its own citizens, the Supreme Court has held that an

8

unconsenting state is immune from lawsuits brought in federal court by the state's own citizens.").

> It is also well-settled that Eleventh Amendment immunity bars suits brought in federal court when the State itself is sued and when an "arm of the State" is sued. *See Mt. Healthy City Sch. Dist. Bd. of Educ. V. Doyle*, 429 U.S. 274, 280, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977). To receive Eleventh Amendment immunity, a defendant need not be labeled a "state officer" or "state official," but instead need only be acting as an "arm of the State," which includes agents and instrumentalities of the State. *See Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429-30, 117 S. Ct. 900, 137 L. Ed. 2d 55 (1997). Whether a defendant is an "arm of the State" must be assessed in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise. *See Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*, 208 F.3d 1308, 1311 (11th Cir. 2000) ("The pertinent inquiry is not into the nature of [an entity's] status in the abstract, but its function or role in a particular context.").

*Manders*, 338 F.3d at 1308. The Supreme Court, further, instructs the inquiry of whether an officer is an arm of the state is not analyzed in "some categorical, 'all or nothing' manner" but is analyzed based on whether "government officials are final policymakers for the local government in a particular area, or on a particular area" and is "dependent on the definition of the official's functions under relevant state law." *McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781, 785, 117 S. Ct. 1734, 138 L. Ed. 2d 1 (1997).

With that framework in mind, in Eleventh Amendment cases, four factors are used to determine whether an entity is an "arm of the State" in carrying out a particular function: "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." *Id.* at 1309 (citations omitted).

9

Plaintiffs aver Defendant Hastie, as the MCLC, ordered an employee of the Mobile County License Commission to access Plaintiffs' and the class members' personal information that was contained in motor vehicle records, gather their email addresses from their personal information, and transfer their email addresses to an electronic storage device, which was provided to the campaign of a local political candidate. (Doc. 36, ¶¶ 20-22). The Court must examine Alabama law to determine whether the MCLC acts as an "arm of the State" when the MCLC gathers and discloses information from motor vehicle records.[2] The Court's inquiry is one of first impression.

## ALABAMA LAW

### 1. How state law defines the entity

---

[2] The Court notes the jury's verdict from the criminal trial of Defendant Kimberly Hastie, which involved acts she committed while she was the MCLC, that the MCLC was an "officer, employee or contractor" of a "State department of motor vehicles" was determined by the Eleventh Circuit Court of Appeals to be supported by sufficient evidence. *United States v. Hastie*, 854 F.3d 1298, 1302 (11th Cir. 2017) (citing 18 U.S.C. §§ 2721(a)). However, the Eleventh Circuit's determination does not preclude this Court's decision of whether the MCLC is an agency of the State or an "arm of the State," since the parties in Defendant Hastie's criminal trial are not the same or in privity with the parties to this action, *see Baloco v. Drummond Co, Inc.*, 767 F.3d 1229, 1251 (11th Cir. 2014) ("Issue preclusion applies when: (1) the issue at stake is identical to the one involved in the prior litigation; (2) the issue was actually litigated in the prior suit; (3) the determination of the issue in the prior suit was a necessary part of the judgment in that action; and (4) the parties are the same or in privity with each other and the party against whom the earlier decision is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding."), and none of the exceptions to nonparty preclusion apply in this case, *see Griswold v. County of Hillsborough*, 598 F.3d 1289, 1292 (11th Cir. 2010) ("A court may apply nonparty preclusion if: (1) the nonparty agreed to be bound by the litigation of others; (2) a substantive legal relationship existed between the person to be bound and a party to the judgment; (3) the nonparty was adequately represented by someone was a party to the suit; (4) the nonparty assumed control over the litigation in which the judgment was issued; (5) a party attempted to relitigate issues through a proxy; or (6) a statutory scheme foreclosed successive litigation by nonlitigants.").

As to the first factor, Defendant Matranga avers Alabama law defines the commissioner of licenses as a designated agent of the Department of Revenue. ALA. CODE § 32-8-34; *see also* ALA. CODE § 32-8-2(3)-(4) (defining "department" as the "Department of Revenue of this state" and including "commissioner of licenses" as a "designated agent"). However, the MCLC is defined as a designated agent of the Department of Revenue only for the purposes of the Uniform Certificate of Title and Antitheft Act. *See* ALA. CODE § 32-8-2 ("For the purpose of this chapter, the following terms shall have the meanings respectively ascribed to them in this section."). The Plaintiff counters Alabama law defines a commissioner of licenses as a county taxing official. *See* ALA. CODE § 11-2-1 (defining as "county taxing official" as a "license commissioner, or other person charged by law in a county with the assessing or collecting of taxes"), but said title seems to only indicate the geographic area in which the official operates. On balance, this factor does not seem to impact immunity.

**2. What degree of control the State maintains over the entity**

As to the State's control over the MCLC in general, Alabama's Constitution limits the county commissions' authority to certain enumerated subjects, *see* ALA. CONST. art. III, § 43.02(a)-(b); ALA. CODE. § 11-3-11, and proscribes them from limiting, altering, or impacting the "constitutional, statutory, or administrative duties, powers, or responsibilities of any other elected officials or to establish, increase, or decrease any compensation, term of office, or expense allowance for any elected officials of the county," ALA. CONST. art III, § 43.02(c), such as the MCLC.

11

The State exerts control over the MCLC in regard to specific functions such as the issuance of licenses for businesses, vocations, occupations, and motor vehicles, ALA. CODE. § 40-12-1 to -425; the collection of ad valorem taxes on motor vehicles in counties with a population of 225,000 or more, ALA. CODE. § 40-5-4; renewal of drivers' licenses or issuance of nondriver identification cards, ALA. CODE. § 32-6-4; registration of motor vehicles and issuance of motor vehicle license plates, ALA. CODE. § 32-6-50 to -700; and the issuance of certificates of title for vehicles, ALA. CODE. § 32-8-1 to -49. Additionally, the Alabama Department of Revenue is mandated to "confer with, advise, and direct the several county tax assessors, tax collectors [such as the MCLC], probate judges, boards, or commissions and each and every state and county official charged with the assessment and collection of taxes as to their duties under the laws of [Alabama]," ALA. CODE. § 40-2-11, and the "salaries, fees, commissions or allowances to be charged or received by the tax assessors, tax collectors, license commissioners, revenue commissioners or other officials charged with the assessing and collecting of ad valorem taxes in the various counties of [Alabama]" are established by the Alabama legislature, ALA. CONST. OF 1901, art. IV, § 96.01.

Specifically, as to motor vehicle records, the application for the first certificate of title of a vehicle in Alabama, which can be made to the MCLC, is prescribed by the Alabama Department of Revenue. ALA. CODE § 32-8-35. The required information on the application, which is, also, mandated by state law, includes the current legal name, residence, and mailing address of the owner;

12

description of the vehicle, including year, make, model, vehicle identification number, type of body, number of cylinders, color, and whether new or used; the date of purchase by the applicant, name and address of the person from whom the vehicle was acquired, and the names and addresses of any lienholders and the dates of their security agreements; and other information that the Alabama Department of Revenue may require. *Id*. While Plaintiffs argue there is no state statute that requires the MCLC to obtain the email addresses of persons who apply for a certificate of title, (Doc. 49, at 26), section 32-8-35 states the MCLC is required to use the Alabama Department of Revenue's application form and contemplates additional information that the Alabama Department of Revenue may require, ALA. CODE § 32-8-35. Additionally, the disclosure of personal information that is contained in motor vehicle title records, registration records, and any other motor vehicle records is controlled by the Alabama Department of Revenue. ALA. CODE § 32-8-6(g). Therefore, the collection of information in regard to motor vehicle records and the distribution of that information is mandated by Alabama law.

In light of these provisions of Alabama law, the Court determines Mobile County's authority over the MCLC, as an elected official, is limited, and, specifically, in the context of when the MCLC gathers and discloses information from motor vehicle records, such authority is mandated by Alabama law. Therefore, this factor weighs in favor of immunity.

### 3. Where the entity derives its funds

The county commissions are required to provide the "license commissioner or such other official charged with assessing and collecting ad valorem taxes with such personnel clerks, and deputies, and such quarters, books, stationery, furniture, equipment, and other such conveniences and supply as may be necessary for the proper and efficient conduct of such offices." ALA. CODE § 40-6A-5. While the funding for the MCLC comes from the Mobile County general fund, the MCLC's funding is mandated by state law, and tilts this factor toward immunity. *See Manders*, 338 F.3d 1304 ("Payment of Sheriff Peterson's budget, when required by the State, does not establish any control by Clinch County over his force policy at the jail or how he trains and disciplines deputies. By virtue of State mandates, both state and county funds are involved in the particular functions in issue. This state involvement is sufficient to tilt the third factor of the Eleventh Amendment analysis toward immunity." (footnote omitted)).

### 4. Who is responsible for judgments against the entity

> Never has the Supreme Court required an actual drain on the state treasury as a *per se* condition of Eleventh Amendment immunity. *See Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 117 S. Ct. 900, 137 L. Ed. 2d 55; *Hess* [ *v. Port Auth. Trans-Hudson Corp*.], 513 U.S. 30, 115 S. Ct. 394 , 130 L. Ed. 2d 245 [(1994)]; *Shands* [*Teaching Hosp. & Clinics v. Beech St. Corp*.], 208 F.3d 1308 [(11th Cir. 2000)]. This is because the Eleventh Amendment "is rooted in a recognition that the States, although a union, maintain certain attributes of sovereignty," and a purpose of the Eleventh Amendment is to "accord[ ] the States the respect owed them as members of the federation" and not to affront the "dignity" or "integrity" of a state by requiring a state to respond to lawsuits in federal courts. *Hess*, 513 U.S. at 39-40, 115 S. Ct. 394 (citation and quotation marks omitted). "[C]urrent Eleventh Amendment jurisprudence emphasizes the integrity retained by each State in our federal system." *Id.* at 39, 115 S. Ct. 394. The State's "integrity" is not limited to who foots the bill, and, at a minimum, the

liability-for-adverse judgment factor does not defeat [a defendant's] immunity claim.

*Manders*, 338 F.3d at 1327-28 (footnote omitted).

Plaintiffs argue since "Alabama law defines the [MCLC] as a 'county taxing official,'" counties are permitted by Alabama law to pay the costs of defending any lawsuit brought against any county official, (Doc. 38, at 19), while Defendant Matranga argues Alabama law does not specify whether the State of Alabama or Mobile County would pay a judgment against the MCLC, (Doc. 37, at 13). The law to which Plaintiffs cite allows a county commission, "in its discretion," to "defray the costs of defending any lawsuit brought against any county official when such lawsuit is based upon and grows out of the performance by said official of any duty in connection with his office" with the caveat that the conduct does not involve a "willful or wanton personal tort or a criminal offense committed by the official." ALA. CODE § 11-1-9. The discretionary payment of defense costs does not mean the county is responsible for judgments against the MCLC, and, in this case, Defendant Hastie's violation of the DPPA would negate Mobile County's discretion to pay her defense costs. After a diligent search of Alabama law, the Court has not found, and the parties have not cited, law that specifies whether the State of Alabama or Mobile County would pay a judgment against the MCLC. Therefore, this factor does not impact immunity.

Having weighed the Eleventh Amendment factors, the Court concludes Defendant Matranga, in his official capacity as the MCLC, is an arm of the State when the MCLC gathers and discloses information from motor vehicle records.

15

## CONCLUSION

Accordingly, it is **RECOMMENDED** the Court **GRANT** Defendant Matranga's motion to dismiss, (Doc. 37), and **DISMISS WITH PREJUDICE** Plaintiffs' claims against Defendant Matranga.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); S.D. ALA. L.R. 72.4. The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that

merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** and **ORDERED** this the 16th day of March 2018.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**