**EXHIBIT 1**

FILED IN OPEN COURT

JAN 29 2015

CHARLES R. DIARD, JR.
CLERK

GBK
SK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO.:  14-00291-CG |
| | ) | |
| v. | ) | Violations: |
| | ) | 18 U.S.C. § 1349 |
| KIMBERLY SMITH HASTIE, | ) | 18 U.S.C. § 1343 |
| RAMONA MCARDLE YEAGER, and | ) | 18 U.S.C. § 1341 |
| JOHN MELVIN HASTIE JR. | ) | 18 U.S.C. § 1951(a) |
| | ) | 18 U.S.C. § 1001 |
| | ) | 18 U.S.C. § 2721(a) |
| | ) | 18 U.S.C. § 371 |

### SUPERSEDING INDICTMENT

**THE GRAND JURY CHARGES**:

At all times relevant to this Superseding Indictment:

### Overview of Mobile County Government

1.      Mobile County is a county in Mobile, Alabama in the Southern District of Alabama.  Mobile County receives funding from, among other sources, the citizens of Mobile County through taxes and fees.

2.      Mobile County is governed by the Mobile County Commission, an agency that provides general administration and other services to the citizens of Mobile County (the "County Commission").  As part of its responsibilities, the County Commission oversees the management and distribution of county funds.  The County Commission is comprised of three commissioners who are elected by the citizens of Mobile County and who each represent a district in Mobile County.

1

3.     The Mobile County Administrator's Office is responsible for coordinating with the County Commission and other elected county officials to provide services to the citizens of Mobile County (the "Administrator's Office").

4.     Mobile County is further served by various departments, which include the Mobile County Revenue Commission and the Mobile County License Commission (respectively, the "Revenue Commission" and the "License Commission").

5.     The Revenue Commission is responsible for mapping, appraisals, assessments, and the collection of ad valorem taxes in Mobile County.  The Revenue Commission is led and managed by an elected Revenue Commissioner.

6.     The License Commission is responsible for vehicle registration in Mobile County as well as overseeing business licenses, sales and use taxes, and other services.  The License Commission is led and managed by an elected License Commissioner.

7.     In the course of conducting government business, the License Commission submits invoices to the County Commission for payment.  After these invoices are reviewed by the County Commission and the Administrator's Office, the County Commission initiates payments through the distribution of county funds.

**Defendants in this Case**

8.     **KIMBERLY SMITH HASTIE** ("**HASTIE**") is currently the License Commissioner for Mobile County.  She was elected License Commissioner on or about November 4, 2008 and began her term on or about January 19, 2009.  **HASTIE** was reelected as License Commissioner on or about November 6, 2012.

9.     **RAMONA MCARDLE YEAGER** ("YEAGER") is currently the Deputy License Commissioner for Mobile County.   She served as the Chief Clerk of the License Commission from in or about 1992 or 1993 to in or about March 2014, when she became the Deputy License Commissioner.

10.     **JOHN MELVIN HASTIE JR.** ("HASTIE JR.") is **HASTIE**'s spouse.

### Individuals Related to this Case

11.     Victor T. Crawford ("Crawford") is an at-will contract employee of the County Commission.   Crawford manages a company that provides information technology services to the License Commission.   Crawford has served the License Commission on an ongoing basis since in or about 1991.   The County Commission compensates Crawford in exchange for his services.

### COUNT ONE
18 U.S.C. § 1349
Conspiracy

12.     The Grand Jury realleges and incorporates numbered paragraphs 1–11 of this Superseding Indictment as if fully set forth herein.

13.     From in or about July 2012 through in or about July 2014, in the Southern District of Alabama, Southern Division, and elsewhere, the defendants,

**KIMBERLY SMITH HASTIE and
RAMONA MCARDLE YEAGER,**

did willfully, knowingly and unlawfully combine, conspire, confederate, and agree together with each other and other persons, both known and unknown to the Grand Jury, to commit certain offenses against the United States, to-wit:

3

to, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343 (wire fraud); and

to, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, for the purpose of executing such scheme and artifice and attempting so to do, place in any post office and authorized depository for mail matter, any matter and thing whatever to be sent and delivered by the Postal Service, and deposit and cause to be deposited a matter and thing whatever to be sent and delivered by any private and commercial interstate carrier, and takes and receives therefrom, any such matter and thing, and knowingly cause to be delivered by mail and such carrier according to the direction thereon, and at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter and thing, in violation of Title 18, United States Code, Section 1341 (mail fraud).

## Objective of the Conspiracy

14.     The objective of the conspiracy was to trick and deceive the County Commission and the citizens of Mobile County by falsifying invoices and misappropriating funds, and to obtain political lobbying and consulting services and personal benefits without the knowledge and oversight of the County Commission and at the expense of Mobile County taxpayer dollars.

## Manner and Means

15.     **HASTIE** and **YEAGER** shared a common plan and purpose to hide and disguise expenditures and payments from the County Commission.

16.     In or about July 2012, **HASTIE** and **YEAGER** sought to retain services from a political consulting firm and to conceal the firm's $10,500.00 retainer fee from the County Commission.   On or about August 21, 2012, the consulting firm submitted an invoice to **HASTIE** for the retainer fee.  **HASTIE** instructed the consulting firm to seek payment of the fee

4

from Crawford, even though Crawford had neither benefitted from nor sought out the firm's services, nor even participated in any manner in the services. **HASTIE** further instructed Crawford to pay the fee, even though the consulting firm had done no work for or with Crawford. On or about August 21, 2012, the political consulting firm e-mailed its invoice to Crawford.

17. In or about August 2012, **HASTIE** reviewed the consulting firm's invoice. She instructed **YEAGER** to disguise and falsify the firm's retainer fee. In a meeting with Crawford, **HASTIE** and **YEAGER** directed him to falsify his invoice and add an item called "Web & Social Media Expenses" to Crawford's invoice. **HASTIE** and **YEAGER** directed Crawford to falsely state that such expenses were $10,500.00. In truth, Crawford did not incur "Web & Social Media Expenses" as stated in his invoice and was being instructed by **HASTIE** and **YEAGER** to pay their political consulting bill. Crawford complied with the instructions because he feared that **HASTIE** would retaliate against him if he did not comply. Crawford sent the false invoice to **YEAGER**. **HASTIE** signed and approved the invoice on or about August 22, 2012. **YEAGER** submitted the false invoice to the County Commission. Not knowing that Crawford's invoice was false and actually in part represented services sought by **HASTIE** and **YEAGER**, the County Commission mailed a check to Crawford on or about September 5, 2012 as payment for his services for July 2012. On or about September 7, 2012, Crawford paid the consulting firm's $10,500.00 retainer fee from personal funds due to fear of consequences of not fulfilling **HASTIE** and **YEAGER**'s instructions.

18. Commencing in or about January or February 2014, **HASTIE** and **YEAGER** sought to have the County Commission unknowingly finance **HASTIE**'s aspirations of serving

5

as Revenue Commissioner in a merged License / Revenue Commission in or about October 2015.

19.    In or about February 2014, **HASTIE, YEAGER**, Crawford, and the License Commission's comptroller met at the License Commission to discuss a potential merger of the License and Revenue Commissions.  During the meeting, **HASTIE** asked Crawford if he supported the merger.  Crawford responded "yes" because he was fearful that **HASTIE** would seek to terminate his employment if he said "no."

20.    During her tenure as License Commissioner, **HASTIE** cultivated a work environment of intimidation at the office and repeatedly threatened to terminate Crawford's employment as well as the employment of several License Commission employees.  On repeated occasions, **HASTIE** led Crawford to believe that he had no choice but to comply with **HASTIE**'s requests.

21.    Specifically, **HASTIE** sought to have Crawford pay **HASTIE**'s $1,800.00 qualifying fee to run for Revenue Commissioner.  Crawford gave **HASTIE** a $1,800.00 check in or about January or February 2014.  Based on Crawford's numerous interactions with **HASTIE** and his experience of providing services to the License Commission, Crawford believed **HASTIE** would seek to terminate his employment if he did not provide **HASTIE** the check for her qualifying fee.

22.    On or about February 5, 2014, **HASTIE** deposited Crawford's $1,800.00 check into a BBVA Compass Bank account ending in 2808.  **HASTIE** used the money provided by Crawford to submit her qualifying fee to run for Revenue Commissioner.  **HASTIE** did not use any of her own funds to pay for her qualifying fee.

23.     From in or about February 2014 to in or about July 2014, **HASTIE** and **YEAGER** sought to falsify invoices and misrepresent to the County Commission services provided to the License Commission.  **HASTIE** requested the services of consultants and lobbyists to support her plan to merge the License and Revenue Commissions.  Unbeknownst to the County Commission, **HASTIE** and **YEAGER** instructed a political consulting firm to falsify their invoices and have them contain false and misleading statements.  Specifically, **HASTIE** and **YEAGER** signed off on the false invoices, knowing they contained lies to trick the County Commission.  The defendants submitted the false invoices to the County Commission, which unknowingly relied on the false invoices signed by **HASTIE** and **YEAGER** and then paid the invoices.

24.     In or about May 2014, **HASTIE** had, unbeknownst to the County Commission, directed the License Commission's comptroller to pay a lobbying firm with unauthorized funds in knowing violation of Mobile County law, Act 2013-292, as described below.  The firm worked for **HASTIE** to draft legislation in support of her plan to merge the License and Revenue Commissions.  **HASTIE** arranged to pay the lobbying firm with money from a segregated account of the License Commission.  **HASTIE, YEAGER,** and the License Commission's comptroller have signature authority on the segregated account.

25.     Enacted on or about May 20, 2013, Act 2013-292 describes the purpose and scope of a segregated account, which is funded by the public.  The law states that money in the account shall come from "a special issuance fee not to exceed five dollars ($5) to be collected by the License Commissioner of Mobile County on each motor vehicle registration, boat renewal or registration, manufactured home registration, business license application, or other instrument

7

registered or application applied for in the office of the license commissioner." The License Commissioner may spend money in the account only as authorized by Act 2013-292, namely, when such spending is "for the preservation and storage of records relating to motor vehicle registration, boat registration, and business licenses as prescribed by the Department of Examiners of Public Accounts and for the purchase, installation, improvement, development, upgrading, and maintenance of equipment and technology in the office of the License Commissioner of Mobile County."

26.     On or about May 29, 2014, the License Commission comptroller provided a $10,000.00 check to the lobbying firm as compensation for its services to **HASTIE** to further her political agenda.  **HASTIE** was aware of Act 2013-292 and knowingly violated its provisions by instructing the comptroller to withdraw and spend money from the account to pay the lobbying firm.  The firm's services were not for any of the purposes enumerated in Act 2013-292.  Rather, the lobbying firm's services were for furthering **HASTIE**'s aspirations of combining the offices of the License and Revenue Commissions.  According to invoice #2106 provided by the lobbying firm to the License Commission, the firm's description of services for **HASTIE** included: "[C]ommunications consulting, management of bill drafting, meeting with legislators, coordination of political efforts.  Review of research and delivery of legislation for introduction."

27.     At times during their conspiracy, **HASTIE** and **YEAGER** knowingly caused to be transmitted e-mail communications concerning the payment of invoices of political consultants.  In or about February 2014, **HASTIE** sought the services of a political consulting company to promote her political ambitions of merging the License and Revenue Commissions. **HASTIE** instructed the consulting company to bill Crawford for services it provided to

8

**HASTIE**, even though she knew Crawford had not benefited from or sought out services from the consulting firm. On or about February 21, 2014, a representative of the company e-mailed Crawford and stated: "Good morning. Kim Hastie provide [sic] us your contact ad [sic] billing information and it is my understanding that you will be assisting her with payment. Attached is our consulting retainer fee for February. If you have any questions at all, please feel free to contact me anytime." Crawford paid the consulting company's invoice out of personal funds because he feared that **HASTIE** would seek to terminate his employment if he did not make the payment.

28.    On or about April 23, 2014, **HASTIE** had a meeting in her office with Crawford and **YEAGER** where **HASTIE** explained that the Strateco invoices had to be changed because "if it's going to say my name, I need to pay it." **HASTIE** instructed Crawford on how to falsify his APL Software Engineering invoice to include falsified Strateco invoices when Crawford billed the License Commission. **HASTIE** explained what changes she wanted made to the Strateco invoices.

29.    On or about May 6, 2014, **YEAGER** notified Crawford that **HASTIE** did not approve his APL Software Engineering invoice #LC201404 for April 2014 services in the amount of $37,531.25 because **HASTIE** did not like the correspondence shown on the invoice. Crawford resubmitted his invoice with falsified Strateco invoices #225 and #234. **HASTIE** and **YEAGER** approved APL invoice #LC201404 on or about May 19, 2014. The County Commission paid APL invoice #LC201404 on or about May 23, 2014, via check #293880.

9

30.     On or about May 12, 2014, **YEAGER** knowingly provided falsified Strateco invoice #250 to Crawford to submit with his May services invoice.  Invoice #250 was dated April 22, 2014 for $2,500.00 and had the following changes:  (1) the bill was changed from "Mobile County License Commission" to "Bienville Rock Software," and (2) the item description was changed from "Kim Hastie Consulting Retainer" to "Digital Marketing and Social Media Management."  Crawford attached the falsified Strateco invoice #250 to his APL Software Engineering invoice #LC201404 for May 2014 services in the amount of $39,514.00 and submitted it to **HASTIE** and **YEAGER** for approval.  **HASTIE** and **YEAGER** approved APL invoice #LC201404 on or about June 10, 2014.  The County Commission paid APL Software $39,514.00 via check #294764 on or about June 17, 2014.

31.     At times during their conspiracy, **HASTIE** and **YEAGER** knowingly caused Mobile County government checks to be processed and delivered by mail and commercial delivery in the Southern District of Alabama.  Specifically, on or about May 23, 2014 **HASTIE** and **YEAGER** caused the County Commission to mail a check payable to APL Software Engineering in the approximate amount of $37,531.25.

In violation of Title 18, United States Code, Section 1349.

## COUNTS TWO THROUGH SIX
### 18 U.S.C. § 1343
### Wire Fraud

32.     The Grand Jury realleges and incorporates numbered paragraphs 1–11 of this Superseding Indictment as if fully set forth herein.

33.     From in or about February 2014 through in or about July 2014, in the Southern District of Alabama, Southern Division, and elsewhere, the defendants,

10

**KIMBERLY SMITH HASTIE and**
**RAMONA MCARDLE YEAGER,**

willfully and knowingly did execute and attempt to execute a scheme and artifice to defraud

Mobile County by means of false and fraudulent pretenses, representations and promises,

knowing at the time that the pretenses, representations and promises were and would be false

when made. **HASTIE** and **YEAGER** falsified invoices and misrepresented to the County

Commission services that political consultants provided to the License Commission.

Unbeknownst to the County Commission, **HASTIE** and **YEAGER** instructed a political

consulting firm to falsify and alter their invoices and have them contain false and misleading

statements. **HASTIE** and **YEAGER** disguised the true nature of services provided by the firm

and disguised the true recipients of the services. **HASTIE** and **YEAGER** approved the false

invoices, knowing that they were false and inaccurate. **HASTIE** and **YEAGER** submitted false

invoices to the County Commission, which relied on the false and fraudulent representations in

the invoices and paid the invoices.

For the purpose of executing this scheme and artifice to defraud Mobile County,

**HASTIE** and **YEAGER** caused to be transmitted in interstate commerce, certain signs, signals,

and sounds by means of wire communication, to-wit:

| Count Two | An e-mail communication to Crawford on or about February 21, 2014 that was transmitted in interstate commerce and concerned the payment of a political consulting firm. |
|---|---|
| Count Three | An e-mail communication to Crawford on or about March 24, 2014 that was transmitted in interstate commerce and concerned the payment of a political consulting firm. |
| Count Four | An e-mail communication to Crawford on or about April 21, 2014 that was transmitted in interstate commerce and concerned the payment of a political consulting firm. |
| Count Five | An e-mail communication to Crawford on or about April 23, 2014 that was transmitted in interstate commerce and concerned the payment of a political |

11

| | consulting firm. |
|---|---|
| Count Six | An e-mail communication to Crawford on or about June 13, 2014 that was transmitted in interstate commerce and concerned the payment of a political consulting firm. |

In violation of Title 18, United States Code, Section 1343.

### COUNTS SEVEN THROUGH NINE
18 U.S.C. § 1341
Mail Fraud

34.     The Grand Jury realleges and incorporates numbered paragraphs 1–11 of this Superseding Indictment as if fully set forth herein.

35.     From in or about February 2014 through in or about July 2014, in the Southern District of Alabama, Southern Division, and elsewhere, the defendants,

**KIMBERLY SMITH HASTIE and
RAMONA MCARDLE YEAGER**,

willfully and knowingly devised and intended to devise a scheme and artifice to defraud Mobile County by means of false and fraudulent pretenses, representations and promises. **HASTIE** and **YEAGER** falsified invoices and misrepresented to the County Commission services that political consultants provided to the License Commission.  Unbeknownst to the County Commission, **HASTIE** and **YEAGER** instructed a political consulting firm to falsify and alter their invoices and have them contain false and misleading statements. **HASTIE** and **YEAGER** disguised the true nature of services provided by the firm and disguised the true recipients of the services. **HASTIE** and **YEAGER** approved the false invoices, knowing that they were false and inaccurate. **HASTIE** and **YEAGER** submitted false invoices to the County Commission, which relied on the false and fraudulent representations in the invoices and paid the invoices.

12

For the purpose of executing such scheme and artifice to defraud and for obtaining money and services, **HASTIE** and **YEAGER** caused Mobile County government checks to be processed and delivered by mail and commercial delivery service within the Southern District of Alabama, to-wit:

| Count Seven | Check #293880 dated May 23, 2014, payable to APL Software Engineering in the amount of $37,531.25. |
| Count Eight | Check #294764 dated June 17, 2014, payable to APL Software Engineering in the amount of $39,514.00. |
| Count Nine | Check # 295643 dated July 11, 2014, payable to APL Software Engineering in the amount of $37,412.50. |

In violation of Title 18, United States Code, Section 1341.

## COUNTS TEN THROUGH FIFTEEN
18 U.S.C. § 1951(a)
Hobbs Act Extortion under Color of Official Right

36.     The Grand Jury realleges and incorporates numbered paragraphs 1–11 of this Superseding Indictment as if fully set forth herein.

37.     From in or about December 2010 through in or about February 2014, in the Southern District of Alabama, Southern Division, and elsewhere, the defendant,

### KIMBERLY SMITH HASTIE,

did knowingly obstruct, delay, and affect commerce and the movement of articles and commodities in commerce by extortion. **HASTIE** engaged in a course of threatening conduct to obtain property from Crawford with his consent. **HASTIE** knew that such property was not lawfully due **HASTIE** and her office. **HASTIE** also knew that the property was provided in return for official acts under color of official right. **HASTIE** used her position of public office for personal benefit. She cultivated a culture of intimidation within the License Commission. **HASTIE** repeatedly threatened to seek to terminate Crawford's employment. Through threats

13

and intimidation, **HASTIE** coerced Crawford to purchase gifts for **HASTIE** and further coerced Crawford to pay **HASTIE**'s qualifying fee to run for Revenue Commissioner.  But for such threats and intimidation, Crawford would not have provided **HASTIE** gifts and a payment, to-wit:

| Count Ten | On or about December 16, 2010, Crawford paid approximately $536.80 for a 42-inch Vizio LCD TV. |
|---|---|
| Count Eleven | On or about December 9, 2011, Crawford paid approximately $381.49 for a 40-inch LCD TV. |
| Count Twelve | On or about December 5, 2012, Crawford paid approximately $505.98 for a Kindle Fire and a 39-inch LCD TV. |
| Count Thirteen | On or about December 11, 2013, Crawford paid approximately $153.99 for a Kindle Fire. |
| Count Fourteen | On or about December 11, 2013, Crawford paid approximately $741.27 for a 37-inch LED TV and an iPad. |
| Count Fifteen | On or about February 5, 2014, **HASTIE** deposited a $1,800.00 check provided by Crawford into a BBVA Compass Bank account ending in 2808. |

In violation of Title 18, United States Code, Section 1951(a).

## COUNT SIXTEEN
### 18 U.S.C. § 1001
### False Statement to a Federal Agency

38.     The Grand Jury realleges and incorporates numbered paragraphs 1–11 of this Superseding Indictment as if fully set forth herein.

39.     On or about July 16, 2014, in the Southern District of Alabama, Southern Division, the defendant,

### KIMBERLY SMITH HASTIE,

did knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, by stating to Special Agent Ketrick Kelley of the Federal Bureau of Investigation that she did not instruct Crawford to bill for work not performed for the License

14

Commission in order to cover the cost of gifts she told Crawford to purchase for a License Commission Christmas party. **HASTIE** made this statement at the License Commission's offices located at 3925-F Michael Boulevard, Mobile, AL 36609. The statement and representation was false because, as **HASTIE** then and there knew, she did in fact instruct Crawford to bill for work not performed as described above.

In violation of Title 18, United States Code, Section 1001.

### COUNT SEVENTEEN
18 U.S.C. § 2721(a)
Prohibited Release and Use of Personal Information from State Motor Vehicle Records

40.    The Grand Jury realleges and incorporates numbered paragraphs 1–11 of this Superseding Indictment as if fully set forth herein.

41.    In or about August 2013, in the Southern District of Alabama, Southern Division, and elsewhere, the defendant,

**KIMBERLY SMITH HASTIE**,

knowingly disclosed and otherwise made available to persons and entities, both known and unknown to the Grand Jury, personal information, as defined in 18 U.S.C. § 2725(3), about individuals obtained by the License Commission in connection with motor vehicle records. Such disclosure and use was not for a purpose authorized by 18 U.S.C. § 2721(b). As described below, **HASTIE** orchestrated a scheme to disclose the e-mail addresses of Mobile County residents, without their consent or prior knowledge, to a political consulting firm for a political purpose, namely, to publicize her support for a mayoral candidate prior to Mobile's mayoral election held on or about August 27, 2013.

15

42.     Per the Driver's Privacy Protection Act of 1994, the License Commission is obligated to protect the privacy of personal information of individuals who transact with the License Commission.  Under the "Policies, Regulations, and Eligibility Requirements" section of its website concerning online tag renewals, the License Commission notes:

> The Federal Driver's Privacy Protection Act of 1994 went into effect September 1997.  This law was enacted to protect the interest of individuals in their personal privacy by prohibiting the disclosure and use of personal information contained in their motor vehicle registration and title records, except as authorized by such individuals or by law.   Personal information is defined as "information that identifies a person, including an individual's social security number, name, and address."  The Mobile County License Commission's number one concern is the security and privacy of your transactions. All requirements have been made to address your privacy concerns and provide secure service to you the taxpayer.

43.     The License Commission regularly acquires and stores the personal information of Mobile County residents who transact with the License Commission during the ordinary course of business.  Such personal information includes e-mail addresses.

44.     On or about August 22, 2013, **HASTIE**, **YEAGER**, and other individuals known to the Grand Jury met with a License Commission employee at the License Commission. **HASTIE** instructed the employee to e-mail everyone within Mobile's city limits a statement endorsing a Mobile mayoral candidate.  The employee told **HASTIE** that such an e-mail would be improper, cautioning her that since the email would originate from a License Commission address the e-mail's recipients would know that the e-mail came from the License Commission. Accordingly, **HASTIE** directed the employee to instead retrieve and download the e-mail addresses of Mobile County residents onto a data storage device commonly known as a flash drive.  Fearing retribution from **HASTIE** if he did not comply with her request, the employee searched the License Commission's server for all e-mail addresses of individuals within the city

16

limits of Mobile. The employee retrieved approximately 30,853 e-mail addresses and placed them onto a flash drive. **HASTIE** wanted the information on the flash drive to be provided to certain persons not employed by the License Commission, namely, representatives of a political consulting firm working for the aforementioned mayoral candidate. Per **HASTIE**'s instructions, the firm's representatives later received the information on the flash drive and gave the e-mail addresses contained on the flash drive, along with **HASTIE**'s statement endorsing the mayoral candidate, to an individual who maintained a website for the candidate in order for that individual to send a mass e-mail to the residents of Mobile County.

45. On or about August 26, 2013, a day before Mobile's mayoral election, the individual who maintained the mayoral candidate's website sent a mass e-mail to the e-mail addresses taken from the information on the flash drive. The e-mail outlined **HASTIE**'s endorsement of the mayoral candidate and encouraged voters to vote for the candidate. The e-mail was sent "On Behalf of Kim Hastie," was labeled "A Message from Kim Hastie," and contained a picture of **HASTIE** supporting the mayoral candidate. The e-mail was sent at **HASTIE**'s behest, without the consent or prior knowledge of the Mobile County residents who were the intended recipients of the e-mail and whose personal information was, unbeknownst to them, used to generate the e-mail.

In violation of Title 18, United States Code, Section 2721(a)(1).

## COUNT EIGHTEEN
18 U.S.C. § 371
Conspiracy to Defraud the United States

46. The Grand Jury realleges and incorporates numbered paragraphs 1–11 of this Superseding Indictment as if fully set forth herein.

17

47. From in or about August 2009 through in or about January 2015, in the Southern District of Alabama, Southern Division, and elsewhere, the defendants,

**KIMBERLY SMITH HASTIE and**
**JOHN MELVIN HASTIE JR.,**

did willfully, knowingly and unlawfully combine, conspire, confederate, and agree together with each other and other persons, both known and unknown to the Grand Jury, to defraud the United States.

### Objective of the Conspiracy

48. The objective of the conspiracy was to achieve personal financial gain through tax evasion.

### Manner and Means

49. In pursuit of financial gain, **HASTIE** and **HASTIE JR.** conspired to impede and obstruct the lawful government functions of the Internal Revenue Service ("IRS") of the United States Department of the Treasury ("Treasury Department") in the ascertainment, computation, assessment, and collection of income taxes. **HASTIE** and **HASTIE JR.** engaged in deceit, craft, and trickery to defraud the Treasury Department. They conspired to conceal from the IRS approximately $58,632.66 in income that they received from brokering land transactions and from timber cutting and land clearing services. As part of their conspiracy, **HASTIE** and **HASTIE JR.** filed fraudulent federal income tax returns and fraudulently diverted and attempted to divert income earned by **HASTIE JR.** to their daughter, all in an attempt to disguise and shield income from the IRS and lower **HASTIE** and **HASTIE JR.**'s tax liabilities.

50. As part of the conspiracy, **HASTIE** also submitted two false Statement of Economic Interests Forms to the Alabama Ethics Commission (the "Ethics Commission").

18

**HASTIE** sought to conceal $38,400.00 earned in 2009 and 2010 from the Ethics Commission and from the citizens of Mobile County. Per Ala. Code § 36-25-14, **HASTIE** must annually file a Statement of Economic Interests Form while serving as an elected public official. The form requires income information about the declarant and the declarant's spouse. When filed, the form becomes a public record available for review on the Ethics Commission's website. Section 9 of the form, entitled "Declaration of Reporting Person," states that the declarant signs the form under oath:

> I have read and completed this Statement of Economic Interests Form and do swear (or affirm) that the information contained in said Statement of Economic Interests is true and correct. I fully understand that anyone who violates the disclosure provision of this Act shall be subject to a fine of $10.00 a day not to exceed $1,000 annually. I also understand that any attachments that I place with this form become a part of this public record.

### Overt Acts

51. Prior to August 14, 2009, **HASTIE JR.** made a verbal agreement with J.Z., whose name is known to the Grand Jury. J.Z. agreed to pay **HASTIE JR.** a fee of 2% of the purchase price of land that J.Z. sought to acquire from a third party in Clarke County, Alabama.


52. On or about August 14, 2009, J.Z. acquired the land for approximately $1,920,000.00. **HASTIE JR.** asked J.Z. to pay **HASTIE JR.**'s fee, approximately $38,400.00, which J.Z. later did in two installments, one check for $20,000.00 and one check for $18,400.00.

53. On or about October 8, 2009, J.Z. provided **HASTIE JR.** check #2337 addressed to **HASTIE JR.** in the amount of $20,000.00.

54. On or about January 4, 2010, J.Z. provided **HASTIE JR.** check #2355 addressed to **HASTIE JR.** in the amount of $18,400.00.

55. On or about January 7, 2010, **HASTIE JR.** deposited check #2355 into account #xxxxxx7945, which he jointly held with **HASTIE** at Regions Bank.

56. On or about April 15, 2010, **HASTIE** electronically filed a Statement of Economic Interests Form for filing year 2009. Despite the form's requirements that she disclose all income that she and her spouse received in 2009, **HASTIE** did not disclose the aforementioned $20,000.00 income that she and **HASTIE JR.** received in 2009.

57. On or about June 22, 2010, **HASTIE** and **HASTIE JR.**, jointly filed a federal income tax return and related schedules for the 2009 tax year. In these disclosures, which are signed under penalty of perjury, **HASTIE** and **HASTIE JR.** did not include the aforementioned $20,000.00 income that they received in 2009.

58. On or about April 27, 2011, **HASTIE** electronically filed a Statement of Economic Interests Form for filing year 2010. Despite the form's requirements that she disclose all income that she and her spouse received in 2010, **HASTIE** did not disclose the aforementioned $18,400.00 income that she and **HASTIE JR.** received in 2010.

59. On or about April 18, 2011, **HASTIE** and **HASTIE JR.** electronically and jointly filed a federal income tax return and related schedules for the 2010 tax year. In these disclosures, which are signed under penalty of perjury, **HASTIE** and **HASTIE JR.** did not include the aforementioned $18,400.00 income that they received in 2010.

60. On or about August 6, 2014, J.Z. provided **HASTIE** and **HASTIE JR.**'s daughter check #3091, which was addressed to **HASTIE JR.**'s daughter in the amount of $10,000.00. The check was deposited in **HASTIE** and **HASTIE**'s daughter's joint Regions Bank account for services rendered entirely by **HASTIE JR.**

20

61.     On or about December 16, 2014, **HASTIE JR.** provided a copy of a letter written by N.M., whose name is known to the Grand Jury, to **HASTIE JR.**'s employer.  The letter authorized payment by **HASTIE JR.**'s employer to **HASTIE JR.**'s daughter for services rendered entirely by **HASTIE JR.**

62.     On or about January 7, 2015, J.Z. provided **HASTIE JR.** check #3073, which was addressed to **HASTIE JR.** in the amount of $5,000.00.  The check was deposited into **HASTIE** and **HASTIE JR.**'s joint Regions Bank account for services rendered entirely by **HASTIE JR.**

63.      On or about January 7, 2015, **HASTIE JR.** authorized a check request from **HASTIE JR.**'s employer to pay his daughter $5,232.66 for services rendered entirely by **HASTIE JR.**

64.     On or about January 8, 2015, **HASTIE JR.**'s employer provided **HASTIE JR.** check #131187, which was addressed to **HASTIE JR.**'s daughter in the amount of $5,232.66 for services rendered entirely by **HASTIE JR.**

In violation of Title 18, United States Code, Section 371.

## FORFEITURE NOTICE

65.     The allegations contained in Counts 1 through 15 and 17 through 18 of this Superseding Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461.

66.     Upon conviction of the offenses set forth in this Superseding Indictment, the defendants,

**KIMBERLY SMITH HASTIE,**
**RAMONA MCARDLE YEAGER, and**
**JOHN MELVIN HASTIE JR.,**

shall forfeit to the United States of America, pursuant to Title 18, United States Code, 981(a)(1)(C) and Title 28, United States Code, Section 2461, any property, real or personal, that constitutes or is derived from proceeds traceable to the offense.

67. If any of the property described above, as a result of any act or omission of the defendant:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461.

A TRUE BILL

FOREMAN UNITED STATES GRAND JURY
SOUTHERN DISTRICT OF ALABAMA

22

KENYEN R. BROWN
UNITED STATES ATTORNEY
By:

_____          JANUARY 2015
Gregory A. Bordenkircher
Assistant United States Attorney

_____
Sinan Kalayoglu
Assistant United States Attorney

_____
Vicki M. Davis
Assistant United States Attorney
Chief, Criminal Division