**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **ANITRA DIAMOND, individually and on behalf of all others similarly situated,** | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION: 1:15-00204-KD-C** |
| | ) | |
| **KIMBERLY HASTIE, in her individual capacity,** | ) | |
| **Defendant.** | ) | |

## ORDER

This matter came before the Court on a February 7, 2019 evidentiary hearing regarding Diamond's Motion for Class Certification (Docs. 78, 79) and Defendant's opposition (Doc. 83), evidence and argument presented at the February 7, 2019 hearing, the parties' post-hearing supplemental briefing (Docs. 97, 100), and Notice of Withdrawal of Labarron Yates (Doc. 87).

## I. <u>Background</u>[1]

This proposed class action centers on alleged violations of the *Drivers' Privacy Protection Act*, 18 U.S.C. § 2721, *et. seq.* (DPPA) and privacy rights per Title 42 U.S.C. § 1983. The "DPPA prohibits the obtainment or disclosure of personal information from motor vehicle records for any use not permitted under the fourteen specific exceptions delineated in § 2721(b) the Act. 18 U.S.C. § 2722(a)." <u>Baas v. Fewless</u>, 886 F.3d 1088, 1090 (11th Cir. 2018). As explained in <u>Maracich v. Spears</u>, 570 U.S. 48, 57-58 (2013):

> To obtain a driver's license or register a vehicle, state DMVs, as a general rule, require an individual to disclose detailed personal information, including name, home address, telephone number, Social Security number, and medical information. *See Reno v. Condon*, 528 U.S. 141, 143…(2000)…..

---

1 This civil case was stayed during the criminal prosecution of Hastie and her appeal.

The DPPA provides that, unless one of its exceptions applies, a state DMV "shall not knowingly disclose or otherwise make available" "personal information" and "highly restricted personal information." §§ 2721(a)(1)-(2). "[P]ersonal information" is "information that identifies an individual, including [a]...driver identification number, name, address ..., [or] telephone number, ... but does not include information on vehicular accidents, driving violations, and driver's status." § 2725(3). "[H]ighly restricted personal information" is defined as "an individual's photograph or image, social security number, [and] medical or disability information." § 2725(4). The DPPA makes it unlawful "for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title." § 2722(a). A person "who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains." § 2724(a).

The DPPA's disclosure ban is subject to 14 exceptions set forth in § 2721(b), for which personal information "may be disclosed." ….

On April 14, 2015 (amended on August 18, 2017 and September 22, 2017), Named Plaintiff Anitra Diamond (Diamond) -- individually and on behalf of all others similarly situated -- filed a class action complaint alleging that Defendant Kimberly Hastie[2] (Hastie) unlawfully obtained, used and/or disclosed personal information of Mobile, Alabama citizens (email addresses) from motor vehicle records in violation of the *Drivers' Privacy Protection Act*, 18 U.S.C. § 2721, *et. seq.* (DPPA) (Count I) and in violation of their privacy rights under Title 42 U.S.C. § 1983 (Count II). (Docs. 1, 28, 36 (amended)). Concerning the DPPA violations (Count I) Diamond alleges that:

…During August 2013, Defendant Hastie, acting under color of the law, and in the course and scope of her employment, knowingly and under misinterpretation of federal law, authorized, directed, ratified, approved, acquiesced in, committed, or participated in, acts and practices in direct violation of the DPPA when she ordered an employee of the Mobile County License Commission to access Plaintiffs' and the Class Members' Personal Information contained in motor vehicle records.

Hastie ordered the employee to access motor vehicle records and gather the email addresses of all Mobile County residents who reside within the city limits and place that Personal Information onto an electronic storage device (a "thumb drive").

_____
2 Former License Commissioner of Mobile County, Alabama.

2

Hastie then ordered that the Personal Information be provided to the campaign of a local political candidate. Non-parties Chad Tucker ("Tucker") and Strateco, LLC ("Strateco"), knowingly received the Personal Information and utilized it in order promote a local political candidate, a purpose not permitted under the DPPA.

(Doc. 36 at 5).[3]  Diamond's' DPPA count (Count I) specifies that Hastie's "accessing, obtaining, disclosing and/or using" the motor vehicle records violate Section 2724(a) of the DPPA.  (Id. at 9). Email addresses constitute "personal information" under DPPA.  United States v. Hastie, 854 F.3d 1298, 1303-1304 (11th Cir. 2017) (an email address is personal information protected by the DPPA because it is information that identifies an individual).  Based on Hastie's conduct, Diamond seeks -- per Section 2724(b)(1) -- liquidated damages of $2,500, per individual, per occurrence (each instance Hastie unlawfully obtained, used, and/or disclosed protected personal information); punitive damages; and attorneys' fees.[4]

In Count II, with regard to Section 1983, Diamond alleges that she had a reasonable expectation of privacy as to the personal information provided to the Mobile County License Commission, and that Hastie deprived her of her rights to privacy as secured by the DPPA.[5]  (Doc. 36 at 11).  From this, Diamond claims attorneys' fees and costs.  (Id. at 12).

On November 12, 2018, Diamond moved to certify a class of similar situated individuals,

---

3 Plaintiffs' official capacity claims against Hastie were dismissed.  Thus, only individual capacity claims remain.  (Doc. 59).

4  Which provides as follows:
**(b) Remedies.**--The court may award--
    **(1)** actual damages, but not less than liquidated damages in the amount of $2,500;
    **(2)** punitive damages upon proof of willful or reckless disregard of the law;
    **(3)** reasonable attorneys' fees and other litigation costs reasonably incurred; and
    **(4)** such other preliminary and equitable relief as the court determines to be appropriate.

5 In Collier v. Dickinson, 477 F.3d 1306, 1310-1311 (11th Cir. 2007) the Court reaffirmed that the DPPA provides a statutory right to privacy of personal information that is enforceable separately under Section 1983.

3

asserting that certification is proper because the requirements of <u>Federal Rules of Civil Procedure</u> Rule 23(a) and Rule 23(b)(3) are satisfied. (Doc. 78). Specifically, Diamond contends that:

> …The License Commission issues driver's licenses and automobile titles and maintains motor vehicle registrations for residents of Mobile County….The License Commission maintains a website, which requires users to provide their email addresses for all online transactions….The License Commission also instructs tellers at its offices to obtain email addresses from licensed drivers and motor vehicle owners….

> ….Brad Bray, the manager of information technology….downloaded a list of email addresses onto a flash drive and delivered it to Hastie's secretary… The flash drive contained approximately 30,853 email addresses…Hastie gave the flash drive containing the email addresses to the Stimpson campaign, and the Stimpson campaign sent out Hastie's endorsement to those email addresses….

> In 2015, a federal grand jury returned a superseding indictment against defendant Hastie. ….Count 17 charged Hastie with violating the DPPA by disclosing the email addresses collected by the License Commission to a political consulting firm to tout Hastie's support for a mayoral candidate.….

> The jury found defendant Hastie guilty of violating the DPPA.….Hastie appealed…the Eleventh Circuit affirmed….[and]….among other things, held that the term "personal information" in the DPPA includes e-mail addresses, and thus defendant Hastie's knowing release of drivers' e-mail addresses to a third party violated the DPPA.….

(<u>Id</u>.) Diamond requests that she be designated representatives of the following class:[6]

> All persons who had email addresses in the custody of the Mobile County License Commission which were disclosed by defendant Kimberly Hastie to Chad Tucker and Strateco, LLC.

> Excluded from the class are: defendant Hastie and her immediate family; all persons who make a timely election to be excluded from the class; the judges to whom this case is assigned and immediate family members thereof.

(Doc. 78 at 2-3, 25). Moreover, Diamond requests certification of these causes of action:

> Any claims for statutory damages under the Drivers' Privacy Protection Act, 18 U.S.C. § 2724(a), and 42 U.S.C. § 1983, premised upon disclosures of personal information by defendant Hastie to Chad Tucker and/or Strateco LLC.

---

6 This amends the class as defined in the Amended Complaint (Doc. 36 at ¶25).

(Id. at 25).

As grounds, Diamond contends that certification under Rule 23(a) is proper because: 1) the class of over 30,000 plaintiffs is sufficiently numerous to render joinder impracticable; 2) defendant Hastie obtained, used, and/or disclosed DPPA protected personal information of each class member in an identical manner and therefore there are numerous issues of law and facts common to each class member: 3) the claims of the class representatives are typical of, if not identical to, the claims of the class as a whole; and 4) the class representative will fairly and adequately protect the interests of the class. (Doc. 78). Diamond adds that certification under Rule 23(b)(3) is proper because: "Hastie obtained, used, and/or disclosed the DPPA protected personal information of each class member in identical fashion; therefore, common questions of law and fact predominate over individual questions. Moreover, given the size of the proposed class, the utilization of the class action device is superior to other available methods of litigation and, as such, represents the most fair and efficient mode of adjudicating this controversy." (Id.)

Hastie opposes the motion, asserting -- in part -- that: 1) the proposed class is so numerous that joinder of all members is impractical; 2) questions of law and fact are not common to class members; 3) the named plaintiffs are not typical of claims of the proposed class; and 4) Plaintiffs assert a Section 1983 claim as to which there is no statutory liquidated damages amount and class certification is not superior. (Doc. 83). Hastie also highlights a myriad of "issues" and "questions" regarding the flash drive at issue, the status of the emails (defunct, containing typos, etc.), and more, as undermining the Rule 23 class requirements. (Id.)

## II. <u>Yates</u>

On January 25, 2019, Plaintiff Labarron Yates filed a notice of withdrawal stating that he

"no longer seeks to serve as a named Plaintiff or class representative[.]" (Doc. 87 at 1). Yates' Notice of Withdrawal is **GRANTED,** and Yates is **REMOVED** as a "named plaintiff" and/or proposed class representative, and Anitra Diamond is the only "named plaintiff" and proposed class representative presently before the Court. As such, from this point forward, the Court will reference Diamond as the plaintiff (or as Plaintiff in the singular) in assessing this case.

## III.    Class Certification - Relevant Law

Diamond moves for class certification under Rules 23(a) and 23(b)(3). Per <u>Family Med. Pharm., LLC v. Trxade Group, Inc</u>., 2017 WL 1042079, *3-4 (S.D. Ala. Mar. 17, 2017):

> "Under Rule 23, certification is proper where the proposed [class satisfies] an implicit ascertainability requirement, the four requirements listed in Rule 23(a), and the requirements listed in any of Rule 23(b)(1), (2), or (3)." *Karhu v. Vital Pharms, Inc*., 621 Fed. Appx. 945, 946 (11th Cir. 2015) (citing *Little v. T–Mobile USA, Inc*., 691 F.3d 1302, 1304 (11th Cir. 2012)). Also, "[f]or a district court to certify a class action, the named plaintiffs must have standing[.]" *Vega v. T-Mobile USA, Inc.,* 564 F.3d 1256, 1268 (11th Cir. 2009) (quoting *Klay v. Humana, Inc.,* 382 F.3d 1241, 1250 (11th Cir. 2004)).
>
> As to the ascertainability requirement, "Rule 23 implicitly requires that the "proposed class is adequately defined and clearly ascertainable." *Karhu*, 621 Fed. Appx. at 946 (citing *Little*, 691 F.3d at 1304) (internal quotation marks omitted). The Eleventh Circuit requires that the class definition "contain[ ] objective criteria that allow for class members to be identified in an administratively feasible way." *Id*…As to the second requirement, "[i]n order to establish ascertainability, the plaintiff must propose an administratively feasible method by which class members can be identified" *Id*. at 947. "Identifying class members is administratively feasible when it is a 'manageable process that does not require much, if any, individual inquiry.' " *Id*. at 946 (quoting *Bussey v. Macon Cty. Greyhound Park, Inc*., 562 Fed.Appx. 782, 787 (11th Cir. 2014)).

The Rule 23(a) requirements for certification of any class action are: "(1) numerosity ('a class [so large] that joinder of all members is impracticable'); (2) commonality ('questions of law or fact common to the class'); (3) typicality (named parties' claims or defenses "are typical…of the class"'; and (4) adequacy of representation (representatives 'will fairly and adequately protect the interests of the class')." <u>Amchem Prod., Inc. v. Windsor</u>, 521 U.S. 591, 613 (1997); <u>Vega v.</u>

T-Mobile, USA, Inc., 564 F.3d 1256, 1268 (11th Cir. 2009) (same).  Moreover, at least one of the

three requirements in Rule 23(b) must be satisfied. Little v. T–Mobile USA, Inc., 691 F.3d 1302,

1304 (11th Cir. 2012); Klay v. Humana, Inc., 382 F.3d 1241, 1250 (11th Cir. 2004), abrogated in

part on other grounds by Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639 (2008); Palm Beach

Golf Ctr.-Boca, Inc. v. Sarris, 311 F.R.D. 688, 698 (S.D. Fla. 2015).  In this case, Diamond alleges

that she meets the requirements of Rule 23(b)(3) which requires that the Court find that the

questions of law or fact common to class members predominate over any questions affecting only

individual members, and that a class action is superior to other available methods for fairly and

efficiently adjudicating the controversy.

Further, "[t]he burden of proof to establish the propriety of class certification rests with the

advocate of the class." Valley Drug Co. v. Geneva Pharms., Inc., 350 F.3d 1181, 1187 (11th Cir.

2003).  Finally, while overall a district court's decision to grant class certification lies within its

sound discretion, Gulf Oil v. Bernard, 452 U.S. 89, 100 (1981), the court must nevertheless conduct

a "rigorous analysis" that "consider[s] the merits of the case to the degree necessary to determine

whether the requirements of Rule 23 will be satisfied[]" Vega, 564 F.3d at 1266.

As explained in Vega:

> …."Although the trial court should not determine the merits of the plaintiffs' claim at the
> class certification stage, the trial court can and should consider the merits of the case to the
> degree necessary to determine whether the requirements of Rule 23 will be satisfied." 
> *Valley Drug,* 350 F.3d at 1188 n. 15 (citing *Gen. Tel. Co. of the Southwest v. Falcon*, 457
> U.S. 147, 160….(1982)); *see Coopers & Lybrand v. Livesay,* 437 U.S. 463, 469 & n.
> 12…(1978) ("[t]he class determination generally involves considerations that are
> 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.' ... 'The
> more complex determinations required in Rule 23(b)(3) class actions entail even greater
> entanglement with the merits.' ") (emphasis and citations omitted); *Huff v. N.D. Cass Co.
> of Ala.,* 485 F.2d 710, 714 (5th Cir.1973) (en banc) ("It is inescapable that in some cases
> there will be overlap between the demands of [Rule] 23(a) and (b) and the question of
> whether plaintiff can succeed on the merits."); *Castano,* 84 F.3d at 744 ("Going beyond

the pleadings is necessary, as a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues.")….

Vega, 564 F.3d at 1265-1266 (footnotes omitted).

## IV. **Standing**

As the Eleventh Circuit has made clear, "analysis of class certification must begin with the issue of standing." Griffin v. Dugger, 823 F.2d 1476, 1482 (11th Cir. 1987). "The question of whether an individual has standing to raise a claim is particularly important in the class action context because, before the court ever reaches the question of whether the individual's claims and the class claims will share common questions, it must decide whether the individual has a cognizable claim at all." Likes v. DHL Exp., 288 F.R.D. 524, 528 (N.D. Ala. 2012).

Diamond does not specifically allege Article III standing in the operative complaint (Doc. 36) or motion for class certification (Doc. 78). Presumably, however, Diamond bases her standing on the allegation that she is a "Mobile County Alabama citizen[] who provided [her] email addresses to the License Commission while renewing [her] driver's licenses -- which were later 'pulled from the Mobile County License Commission's database and provided to a representative of a local political campaign for a purpose that was not authorized by Plaintiff.'" (Doc. 78 at 7).

Although Hastie generally states in her answer that Diamond lacks standing (Doc. 41 at 6), she makes no substantive argument in her briefing regarding standing. At this point, the Court finds that Diamond has cognizable DPPA and Section 1983 claims, and thus standing to proceed.

## V. **Rule 23(a) requirements**

As summarized by the Eleventh Circuit in Landeros v. Pinnacle Recovery, Inc., 692 Fed. Appx. 608, 611 (11th Cir. 2017) (footnote omitted) (affirming the district court's denial of class

certification):

> Rule 23(c) directs a district court, "[a]t [the] earl[iest] practicable time after a person sues or is sued as a class representative, ... [to] determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). While it is sometimes possible to decide the propriety of class certification from the face of the complaint, *see Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1309 (11th Cir. 2008), the Supreme Court has "emphasized that it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Comcast Corp. v. Behrend*, 569 U.S. 27…(2013) (internal quotation marks omitted). In fact, the determination usually should be predicated on more information than the complaint itself provides, and it "will frequently entail overlap with the merits of the plaintiff's underlying claim." *Id*. (internal quotation marks omitted). After all, "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351….(quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160…(1982)).

> Moreover, "because class actions are an exception to our constitutional tradition of individual litigation," *Brown v. Electrolux Home Prods., Inc*., 817 F.3d 1225, 1233 (11th Cir. 2016), a district court has great responsibility to adhere to the framework of Rule 23. *Id*. [ ] Hence, if the district court has reservations about whether the Rule 23 requirements have been satisfied, it should refuse to grant class certification until the parties have assuaged the district court's doubts. *Id*. at 1233–34.

Diamond seeks Rule 23(a) class certification for the DPPA claims and the Section 1983 claims (intertwining those claims).

### A.    <u>Numerosity</u>

Rule 23(a)(1) requires a class to be "so numerous that joinder of all members is impracticable." In the Eleventh Circuit, a class of less than 21 is inadequate while a class of more than 40 is adequate. <u>See</u>, <u>e.g.</u>, <u>Cox v. Am. Cast Iron Pipe Co.</u>, 784 F.2d 1546, 1553 (11th Cir. 1986); <u>Helms v. ConsumerInfo.com, Inc.</u>, 236 F.R.D. 561, 564 (N.D. Ala. 2005).    Per Diamond, the Defendant unlawfully disclosed the email addresses of over 30,000 Mobile County residents, such that it would be impracticable to join all of these citizens.    Additionally, Diamond asserts that judicial economy will be served by certifying the proposed class to avoid multiplicity of lawsuits assessing the same DPPA claims based on the same conduct.

Hastie alleges there is no reliable evidence of "over 30,000" citizens constituting plaintiffs in this case. Hastie primarily takes issue with the fact that the actual thumb drive, which contained the improperly disclosed emails, has not been found. Thus, Hastie contends that Diamond's only evidence of the 30,000 citizens allegedly affected by the disclosure is an unreliable list that was re-created by License Commission IT Manager Brad Bray (Bray) at the request of the FBI.[7] From this, Hastie contends that Diamond cannot meet her numerosity burden.

Hastie's argument fails. First, Bray has testified that the email list totaled about 30,000 emails that were compiled from the License Commissioner's database. (Doc. 92 at 50-51 (2/7/19 Transcript)). Moreover, there does not appear to be any disputed fact that the thumb drive given to the campaign by Hastie contained a very large number of emails taken from the License Commissioner's database. This is sufficient for the purpose of establishing numerosity at this preliminary stage.

The FBI currently has custody of the re-created list of emails. Assistant U.S. Attorney Darryl Atchison was present at the hearing to verify this fact and also to inform the Court that the email list would not be released by the FBI, unless the Court so ordered.[8] The Court requested, and was granted, an *in camera* review of the email list. Based on this cursory review, and the testimony of Bray, the Court is satisfied that the proposed class is so numerous that joinder of all members is impracticable.

---

[7] The list of emails was re-created by Bray running the same request for information that he had previously run when requested by Hastie.

[8] The Court denies any request to order the FBI to produce, to the parties, the list of emails that was recreated for purposes of the criminal investigation.

### B.    Commonality

Rule 23(a)(2) provides that the representative parties of a class may sue on behalf of all members where "there are questions of law or fact common to the class." To establish commonality, the action "must involve issues that are susceptible to class-wide proof." Murray v. Auslander, 244 F.3d 807, 811 (11th Cir. 2001). Also, Plaintiffs must "demonstrate that the class members 'have suffered the same injury.'" Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2551 (2011) (internal citation omitted). As explained in Dukes:

> Their claims must depend upon a common contention…[t]hat common contention…must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.
>
> > "What matters to class certification ... is not the raising of common 'questions'— even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Nagareda, supra,* at 132.

131 S.Ct. at 2551.

Diamond asserts that common legal and factual questions, which do not vary from one class member to another, and which may be determined without reference to the individual circumstances of any class member, include:

> a. the nature and extent of defendant Hastie's actions in obtaining, using, and/or disclosing the class members' highly restricted, DPPA protected personal information;
>
> b. whether the actions taken by defendant Hastie in obtaining, using, and/or disclosing the class members' highly restricted, DPPA protected personal information violated the DPPA;
>
> c. whether defendant Hastie knew that her conduct in obtaining, using, and/or disclosing the class members' highly restricted, DPPA protected personal information, violated the DPPA;

d. whether the plaintiffs and class members are entitled to liquidated damages of $2,500 per DPPA violation pursuant to 18 U.S.C. § 2724(b)(1);

e. whether the plaintiffs and class members are entitled to damages pursuant to 42 U.S.C. § 1983;

f. whether the plaintiffs and class members are entitled to punitive damages pursuant to 18 U.S.C. § 2724(b)(2); and

g. whether the plaintiffs and class members are entitled to reasonable attorneys' fees and other litigation costs reasonably incurred pursuant to 18 U.S.C. §2724(b)(3), 42 U.S.C. § 1988, and other applicable law.

(Doc. 78 at 14-15).

Diamond's purported class also excludes "all persons who make a timely election to be excluded from the class[]" such that any individuals suggested by Hastie as supporting a denial of class certification (i.e., proposed class members who liked the email, who approved of receiving the email, who voluntarily provided their email address to the political campaign, who strongly personally and/or politically support defendant, who do not have any problem with their email addresses being used, etc.) could self-exclude from the class. From this, Diamond contends that class members have suffered the same alleged injury: violation of their DPPA right to privacy via Hastie's actions in disclosing their DPPA protected personal information.

The Court finds that, as delineated by Diamond, there are questions of law and fact common to the proposed class that are susceptible to class-wide proof.

### C.   **Typicality**[9]

Rule 23(a)(3) provides that class representatives may sue on behalf of the class only if the "claims or defenses of the representative parties are typical of the claims or defenses of the class[.]"

---

[9] "Commonality and typicality are related, but [t]raditionally, commonality refers to the group characteristics of the class as a whole, while typicality refers to the individual characteristics of the named plaintiff in relation to the class." Outten, 2010 WL 2194442, *3.

Identical claims or defenses are not required, as "[a] sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1337 (11th Cir. 1984).  See also Williams v. Mohawk Indus., Inc., 568 F.3d 1350, 1357 (11th Cir. 2009) (same).

Diamond asserts that her claims are identical to those of the proposed class and that Hastie engaged in the same conduct as to all class members -- i.e., there exists the same events, practices and/or course of conduct giving rise to the claims of the other class members as well as the same legal theories.  Diamond contends that:

> ….Hastie disclosed the representative plaintiff's email address[] on the same thumb drive as the other 30,000 class members, which she provided to operatives of a local political campaign. As such, Hastie disclosed each named plaintiffs' DPPA protected personal information in the same way and for the same reasons as the other class members – thus, the legal justification, or lack thereof, appears equal. The plaintiff[] and the class members all have essentially identical claims for DPPA violations, including claims for liquidated damages of $2,500 each as provided by 18 U.S.C. § 2724(b)(1)……

> The plaintiffs' claims….are typical because they arise from the same events, practices, and/or course of conduct that gives rise to the claims of the other class members, and both the plaintiffs' and the class members' claims are based on the same legal theories…

(Doc. 78 at 16-17).

In contrast, per Hastie, each and every claim of the purported class members is not typical for a variety of reasons.  These include: Diamond has no proof that her email address is on the flash drive; Diamond had a public email address already disclosed via her official Mobile Community Action public letterhead (not private email address); other class members may have provided email addresses that were not private due to wide dissemination of same (via public, professional, business work, etc.); Diamond's political association with the former mayor creates

a conflict with her being the class representative.

Diamond asserts that her email address was disclosed by Hastie at the same time and in the same manner as the email addresses of other class members. As evidentiary support, Diamond points to a copy of the email she received from the campaign as a result of the unauthorized disclosure of her email by Hastie. (Doc. 88-3 (Decltn. Diamond (Ex. A thereto)). Diamond adds whether her email was public, or she was associated with the opposing mayoral campaign, is irrelevant.

For purposes of the proposed class action, Diamond meets the typicality requirement because her claim arises from the same event and is based on the same legal theory. The Court agrees that Diamond's association with the opposing mayoral candidate does not affect the fact that her claim typifies the class. Moreover, whether the email was publicly available or was a business/work email does not affect whether a violation occurred under the DPPA. In United States v. Hastie, 854 F.3d 1298, the Eleventh Circuit held that an individual's email address is personal information protected by the DPPA. The Court did not distinguish between an individual's home email address and an individual's email address at work. Id. at 1303-1305.

### D. **Adequacy**

Rule 23(a)(4) provides that class representatives may sue on behalf of the class only if "the representative parties will fairly and adequately protect the interests of the class." This prompts two distinct inquiries: "(1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." Valley Drug, 350 F.3d at 1189 (internal quotes omitted).

As to the first inquiry,"[t]he existence of minor conflicts alone will not defeat a party's claim to class certification: the conflict must be a 'fundamental' one going to the specific issues in controversy." Id. A "fundamental conflict exists where some party members claim to have been harmed by the same conduct that benefitted other members of the class." Id. With regard to the second prong, Plaintiffs must show that their counsel is "qualified, experienced, and generally able to conduct the litigation." Id. See also e.g., Ortiz v. Fibreboard Corp., 527 U.S. 815, 856 (1999) ("See Amchem, 521 U.S., at 627, 117 S.Ct. 2231 (…..'structural assurance of fair and adequate representation for the diverse groups and individuals affected')"…).

With regard to these two assessments, Diamond alleges the following:

> ….each of the plaintiffs' claims are identical to those of the class members, and they seek no preferential treatment. Each of the named plaintiffs seek to demonstrate that the defendant's conduct violated federal law in the same manner for all class members. Furthermore, the named plaintiffs are seeking statutory liquidated damages which will provide the identical remedy for all class members. Because of the commonality of issues among class members, there is no hint of a conflict between the proposed class representatives and the other class members. The plaintiffs have every reason to represent the class zealously and are motivated to do so.

(Doc. 78 at 18 (emphasis added)). Diamond adds that her counsel -- W. Daniel Miles III, Archie I. Grubb II, Kasie M. Braswell, and D. Brian Murphy (Doc. 78 at 19, 25; Doc. 79-8) -- meet Rule 23(g)'s requirements and are experienced and competent to handle class actions, having successfully litigated complex cases (including consumer class actions and multi-district actions).

Hastie does not dispute counsel's ability or resources to represent the proposed class members in the litigation. Hastie, however, disputes whether Diamond can adequately represent the class due to her political associations. Hastie cites no authority for this proposition. The Court does not find Diamond's political associations to be relevant. Hastie has cited no conflict between

Diamond and the purported class. Accordingly, the Court finds that Diamond could adequately represent the proposed class.

## VI. <u>Rule 23(b)(3) Requirements</u>

Diamond seeks Rule 23(b)(3) class certification for the DPPA claims and the Section 1983 claims (intertwining those claims). Under Rule 23(b)(3), a "class action may be maintained if Rule 23(a) is satisfied and if…the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Rule 23(b)(3) delineates four (4) non-exclusive[10] factors to consider when determining whether a class action is superior: the class members' interests in individually controlling the prosecution/defense of separate actions; the extent/nature of any litigation concerning the controversy already begun by/against class members; the desirability/undesirability of concentrating the litigation in the particular forum; and the likely difficulties in managing a class action. Fed.R.Civ.P 23(b)(3)(A)-(D).

### A. <u>Predominance</u>

"Considering whether 'questions of law or fact common to class members predominate begins, of course, with the elements of the underlying cause of action." <u>Local 703, I.B. of T. Grocery & Food Employees Welfare Fund v. Regions Fin. Corp.</u>, 762 F.3d 1248, 1253 (11th Cir.

---

10 2 NEWBERG ON CLASS ACTIONS § 4:68 (5th Ed. Nov. 2018):

Advisory Committee Note to 1966 Amendments, 39 F.R.D. 69, 100 (1966) ("Factors (A)–(D) are listed, non-exhaustively, as pertinent to the findings"); *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615–616…(1997) ("Rule 23(b)(3) includes a nonexhaustive list of factors pertinent to a court's 'close look' at the predominance and superiority criteria") (emphasis added).

<u>See</u> also e.g., <u>Williams</u>, 568 F.3d at 1358 (noting the Rule 23(b)(3) factors are "non-exhaustive").

2014) (internal quotations and citations omitted). "[I] is not necessary that all questions of law or fact be common[;] only that some questions are common and that they predominate over the individual questions." Klay, 382 F.3d at 1254. But "[t]he class issues subject to generalized proof must predominate over issues subject to individualized proof." In re HealthSouth Corp. Sec. Litig., 257 F.R.D. 260, 276 (N.D. Ala. 2009). "In essence, the Court must determine 'whether there are common liability issues which may be resolved efficiently on a class-wide basis.'" Outten v. Capital Mgt. Servs, L.P., 2010 WL 2194442, *4 (S.D. Fla. Apr. 9, 2010) (citations marks omitted). As explained by the Eleventh Circuit:

> For the complaint to support class certification as to commonality and predominance, there must be common questions of law or fact among the class relating to one or both of these substantive claims, and, in addition, those common questions must predominate such that they "ha[ve] a direct impact on every class member's effort to establish liability" that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member. Klay, 382 F.3d at 1255 (citation omitted; alteration in original). "Under the Rule 23(a)(2) commonality requirement, a class action must involve issues that are susceptible to class-wide proof." Murray v. Auslander, 244 F.3d 807, 811 (11th Cir.2001). Even if the court can identify common questions of law or fact, however, "[t]he predominance inquiry ... is 'far more demanding' than Rule 23(a)'s commonality requirement." Rutstein v. Avis Rent–A–Car Sys., Inc., 211 F.3d 1228, 1233 (11th Cir.2000) (quoting Jackson, 130 F.3d at 1005, which quotes, in turn, Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623–24….(1997)).

> "Whether an issue predominates can only be determined after considering what value the resolution of the class-wide issue will have in each class member's underlying cause of action." Klay, 382 F.3d at 1255 (quoting Rutstein, 211 F.3d at 1234).

Vega, 564 F.3d at 1270. The Eleventh Circuit in Klay, 382 F.3d at 1255, describes the predominance test as follows:

> Where, after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23(b)(3)....

> ….[I]f common issues truly predominate over individualized issues in a lawsuit, then 'the

addition or subtraction of any of the plaintiffs to or from the class [should not] have a substantial effect on the substance or quantity of evidence offered.'…..Put simply, if the addition of more plaintiffs to a class requires the presentation of significant amounts of new evidence, that strongly suggests that individual issues (made relevant only through the inclusion of these new class members) are important…..If, on the other hand, , then common issues are likely to predominate.

Id. (internal citations omitted).

According to Diamond:

… there are a host of factual and legal questions common to the class, any one of which would be sufficient to meet the "predominance" requirement. If the plaintiffs and every class member were to bring thousands of individual actions, each would rely upon identical conduct by the defendant in order to establish their respective cases. Here, there is no question the plaintiffs seek to remedy common legal grievances on behalf of the class. These common legal grievances are based on uniform conduct by the defendant. In fact, every factual and legal issue associated with the defendant's liability can be proven with the same evidence. There are no evidentiary issues peculiar to any class member that do not apply to all class members. All evidence to be presented in the case in chief on the issue of liability will, in every respect, be introduced not on behalf of any individual class member, but on behalf of all class members. This common evidence establishes defendant Hastie's liability as to all members of the class…

(Doc. 78 at 21-22).

The Court agrees that common issues of fact and law predominate as it relates to the DPPA claim, but only if Diamond is able to obtain the list of the emails that were disclosed. If Diamond is unable to obtain the list, although the legal questions are the same, the evidence that a plaintiff was on the list (and thus able to prove a violation) will be individualized and circumstantial. See infra. Thus, the court is unable to find at this point that "the addition of more plaintiffs [would leave] the quantum of evidence introduced by the plaintiffs as a whole relatively undisturbed." Klay, 382 F.3d at 1255.

**B.      Superiority**

"Proper superiority analysis considers 'the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs.' *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc*., 601 F.3d 1159, 1184 (11th Cir. 2010)." Dickens v. GC Servs. Ltd. Partnership, 706 Fed. Appx. 529, 537-538 (11th Cir. 2017). Namely, "whether the class action mechanism 'would be the best or the fairest way' to resolve the parties' dispute when compared to available alternatives." Jones v. Government Employees Ins. Co., 2019 WL 1490703, *7 (M.D. Fla. Apr. 4, 2019).

Diamond contends that the class action would be the most fair and efficient procedure because:

> No class member other than the [] named plaintiff][ herein ha[s] filed a lawsuit against defendant Hastie arising out of the events that give rise to the claims in this case.
>
> Without question, all claims for defendant Hastie's violations of the DPPA pertaining to the putative class should be tried in this court. In fact, as the claims involve violation of federal law that occurred in this district, also the district of defendant Hastie's residence, there does not appear to be another court in which the claims could be tried. Concentration in one forum is desirable to avoid multiple trials of the common issues….Any difficulties with managing a class action pale in comparison to the prospect of numerous individual suits being filed.

(Doc. 78 at 22-23).

In contrast, Hastie asserts that:

> …there is no superiority in proceeding as a class. If Plaintiffs were successfully to bring individual actions, they would be able to recover attorney's fees and costs. Thus, there is no disincentive to bring individual claims. Further, a class action claim may result in an astronomical amount of statutory damages (more than $75 million). This is true despite the fact that Defendant's alleged wrongdoing, if any, is relatively minor and many members of the class, if not the majority of the class, suffered no actual damages as a result of Defendant's action.

(Doc. 83 at 3).

In reply, Diamond cites case law supporting certification of class actions with the ability to collect statutory damages and attorneys' fees, citing <u>Califano v. Yamasaki</u>, 442 U.S. 682, 700 (1979) as holding that class relief is available for all claims including statutory damage claims providing for attorneys' fees assuming no clear expression of congressional intent to exempt such claims from Rule 23 (which does not exist under the DPPA).  (Doc. 88 at 8-10).  Diamond adds that Congress did not expressly limit class action damages under the DPPA and that a large potential damage award does not undermine certification (i.e., that such large scale DPPA violations should not shield the defendant from the statutory damages/fees consequences, particularly when the conduct was deliberate or intentional).[11]  (<u>Id</u>. at 10-14).  In further response, Hastie highlights the existence of non-Rule 24(b)(3) factors for the Court's consideration (e.g., the lack of "the thumb drive," that the email list was "recreated," issues of reliability and credibility about the list, etc.) . (Doc. 100 at 1-5).

1.    **<u>Forum</u>**

Concentrating litigation of these claims in this forum favors superiority.  As noted by Diamond, "[t]he plaintiffs are not aware of, and the defendant has not raised, the possibility that any forum would be appropriate other than….the Southern District of Alabama."  (Doc. 88 at 15; Doc. 97 at 3).  Hastie does not dispute concentrating litigation in this forum.  (Doc. 100). As explained in 2 NEWBERG ON CLASS ACTIONS § 4:71 (5th Ed. Nov. 2018) (footnotes omitted):

> Courts have found that class actions in a particular forum are particularly appropriate when that court has already made several preliminary rulings, [ ] when a particular forum is more geographically convenient for the parties, [ ] when other similar actions have been consolidated before the court…

---

11 The Court notes that Hastie has denied knowing that her conduct was illegal.  (Doc. 100 at 11).

Clearly then, there is geographic convenience. The DPPA violation occurred in Mobile County and entails the email addresses of Mobile County residents who provided their emails to the Mobile County License Commission during the relevant time frame. Additionally, this Court has already made some preliminary rulings. Moreover, the criminal prosecution of Hastie for DPPA violations was conducted in this forum. In short, everything occurred in this forum.

### 2.    Other litigation

The factor of "other pending litigation" -- "the extent and nature of any litigation concerning the controversy already begun by or against class member" -- favors superiority. Diamond highlights that "no other civil actions alleging DPPA violations have been filed against Hastie." (Doc. 88 at 15; Doc. 97 at 2). Hastie does not dispute the lack of other pending litigation. (Doc. 100).

There is no evidence that any other putative class members have initiated litigation concerning the same controversy. While Diamond has invested time and resources into litigating this action, there are no other related class actions either ongoing (already begun) or completed. In fact, in the five (5) years since the alleged DPPA violation only one (1) other plaintiff other than Diamond has been added as a plaintiff *and he has since withdrawn*, leaving only Diamond.

### 3.    Manageability

The manageability factor -- "the likely difficulties in managing a class action" – does not favor superiority of the class action. Per Diamond, there are no concerns regarding individualized proof of causation or damages. (Doc. 88 at 15-16; Doc. 97 at 2-3). Diamond adds: "the class is cohesive with all class members readily identifiable through their email addresses. There are no concerns…that laws of different states will apply to different class members…." (Doc. 88 at 15-

16).

The problem that Diamond does not address, is how the email addresses will be obtained. The thumb drive is missing. The re-created list is in the hands of the FBI and was re-created through a criminal investigation. Evidence from a criminal investigation that is not made public through trial or plea is not normally subject to being turned over for a civil trial. Therefore, at present, it appears the way that each plaintiff will be able to prove that their email was disclosed by Hastie is through individual circumstantial evidence, e.g., an email received from the campaign with an endorsement by Hastie. This creates a management problem that would be better handled through individual claims.

## 4. <u>Individual Interests</u>

The factor -- "the class members' interests in individually controlling the prosecution or defense of separate actions" – somewhat favors the superiority of the class action. This is because the claims of potential class members are identical such that the class litigation would achieve the same ends.

As summarized in 2 NEWBERG ON CLASS ACTIONS § 4:69 (5th Ed. Nov. 2018) (footnotes omitted):

> This passage implies, though does not explain, that individual litigation, if plausible, is a preferred means of adjudication and class actions exceptional. Individual lawsuits are generally preferred because each individual gets her own day in court and the opportunity to control her own litigation.[ ] This accords with our "deep-rooted historic tradition that everyone should have his own day in court"[ ] and underscores the fact that class actions are "exceptional" in nature.[]

> This prong of the superiority requirement directs courts to determine whether individuals really would want to control their own litigation in the given situation or whether that ideal is more fiction than reality. The passage identifies two reasons why individuals may have little interest in pursuing litigation themselves. First, their claims may be so closely related to the claims of others that litigation by others will achieve their ends without the need for

their involvement. [ ] Second, their claims may be so small that it would be a waste of their time and/or resources to litigate individually. These situations support the conclusion that individuals have little interest in controlling their own litigation and hence that representative litigation is superior.

### 5. <u>Other Factors</u>

The Rule 23(b)(3) four (4) factor test is non-exclusive. In other words, courts are free in their discretion to consider other factors. There are several reasons why, considering the facts and circumstances of this case, the Court concludes that a class action is not superior to individual claims.

First, plaintiffs who want to bring claim individually are not thwarted by the economies of doing so. The Supreme Court has instructed:

> While the text of Rule 23(b)(3) does not exclude from certification cases in which individual damages run high, the Advisory Committee had dominantly in mind vindication of "the rights of groups of people who individually would be without effective strength to bring their opponents into court at all."….
>
> > "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 344 (1997).

<u>Amchem</u>, 521 U.S. at 617. And as recently explained by the Eleventh Circuit:

> [C]lass actions often involve an aggregation of small individual claims, where a large number of claims are required to make it economical to bring suit. The plaintiff's claim may be so small, or the plaintiff so unfamiliar with the law, that he would not file suit individually. This consideration supports class certification in cases where the total amount sought by each individual plaintiff is small in absolute terms….

<u>Dickens</u>, *supra* (citing <u>Klay</u>, 382 F.3d at 1270-1271 (internal quotations and citations omitted)).

The lack of incentive is not present in this case. Thus, the "policy at the very core of the class action mechanism" is not furthered by class claims. The DPPA provides for at least $2,500

in statutory damages.  Additionally, both the DPPA and Section 1983 provide for attorneys' fees and costs.  And the Court notes that in the almost five (5) years this case has been pending, and well-publicized, there is only one (1) plaintiff, Diamond.

Second, as previously discussed *supra*, there is an essential problem of proof for a class-wide action; the thumb drive is missing, and the FBI's re-created list is likely not available for use in a civil case.  While the plaintiffs might be able to re-create the email list from 2013 again, the Court is without any information that this could be done even if allowed.[12]  And, ironically, in order vindicate the violation of the victim's right to privacy, the victim's right to privacy would have to be invaded again.

Third, the need to deter future action, like in the junk fax cases cited by Diamond, is not present.  Hastie's DPPA violation was an isolated occurrence -- which was prosecuted in federal court, resulted in a conviction and entailed public reprimand, -- such that it is not likely to be seen and/or repeated again in the Mobile County License Commissioner's office.  As Diamond points out, the principal purpose of the DPPA is to stop mass marketers from selling private data/information.  Here, commercial mass marketers are not involved, and the private information was not sold.

Fourth, the Court considers potentially ruinous damages in comparison to the harm at issue. See, e.g., London v. Wal-Mart Stores, Inc., 340 F.3d 1246, 1255 n.5 (11th Cir. 2003) (denying certification on adequacy grounds and in doing so, noting concerns about a lack of superiority because -- in part -- damages would be "enormous and completely out of proportion to any harm

---

[12] Disclosure of personal information from state motor vehicle records is permitted "[f]or use in connection with any civil, criminal, administrative, or arbitral proceeding….." 18 U.S.C. § 2721(b)(4) (Permissible uses).

suffered by the plaintiff[]"). Diamond contends that the possibility of astronomical damages does not undermine superiority, and that the Eleventh Circuit's reference to same in <u>London</u> is merely dicta, and not binding. (Doc. 97 at 6-7). In support, Diamond cites <u>Keller v. Macon Cty. Greyhound Park, Inc</u>., 2011 WL 1085976, *11 (M.D. Ala. Mar. 24, 2011) and its discussion -- in a FACTA case -- of the <u>London</u> footnote (noting the damages discussion was clearly dicta, the damages in <u>London</u> were not statutory, and that deference should be given to Congress' determination of the appropriate amount of statutory damages for violations). (<u>Id</u>.) Diamond also submits a public official bond for Hastie in the amount of $1,452,500, and references "additional sources of recovery that may be available to her[,]" to suggest that she could pay at least a portion of any damages award. (<u>Id</u>. at 9-10).

In response, Hastie contends that <u>London's</u> dicta is relevant and "can, of course, have persuasive value." (Doc. 100 at 9 (citing <u>Pretka v. Kolter City Plaza II, Inc</u>., 608 F.3d 744, 762 (11th Cir. 2010)). Hastie also adds that the Eleventh Circuit in <u>Dickens</u>, 706 Fed. Appx. at 539 at note 4 (citing <u>London</u>) reiterated that "the district court may consider the possibility of disproportionately harsh class damages as part of the superiority inquiry." Hastie adds that there is no evidence of "additional sources of recovery" as argued by Diamond, and that Diamond's reliance on Hastie being "covered" by the public official bond is improper and inaccurate because even if the bond applies and the bond paid a judgment, Hastie would have to indemnify the bond. (Doc. 100 at 12).

The potential liability here, assuming 30,000 plaintiffs, is at least $75 million (assuming only minimum statutory damages). Such would be completely disproportionate to any harm suffered by Diamond (or other plaintiffs). This fact also undermines a finding that a class action

is superior to individual claims.

**VII.**    <u>**Conclusion**</u>

Accordingly, based on the foregoing reasons, it is **ORDERED** that Plaintiffs' Motion and

Incorporated Memorandum in Support of Class Certification" (Docs. 78, 79) is **DENIED.**

**DONE** and **ORDERED** this the **6th** day of **May 2019.**

/s/Kristi K. DuBose
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**
