IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **ARNITA DIAMOND,** ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION: 1:15-00204-KD-C |
| ) | |
| **KIMBERLY HASTIE, in her individual** ) | |
| **capacity,** ) | |
| Defendant. ) | |

**ORDER**

This matter is before the Court on Diamond's motion for summary judgment (Doc. 108), Hastie's Response (Doc. 116), and Diamond's Reply (Doc. 120).

**I.      Background**

This action centers on alleged violations of the *Drivers' Privacy Protection Act*, 18 U.S.C. § 2721, *et. seq.* (DPPA) and privacy rights per Title 42 U.S.C. § 1983. The "DPPA prohibits the obtainment or disclosure of personal information from motor vehicle records for any use not permitted under the fourteen specific exceptions delineated in § 2721(b) the Act. 18 U.S.C. § 2722(a)." Baas v. Fewless, 886 F.3d 1088, 1090 (11th Cir. 2018). As explained in Maracich v. Spears, 570 U.S. 48, 57-58 (2013):

> To obtain a driver's license or register a vehicle, state DMVs, as a general rule, require an individual to disclose detailed personal information, including name, home address, telephone number, Social Security number, and medical information. *See Reno v. Condon*, 528 U.S. 141, 143…(2000)…..
>
> The DPPA provides that, unless one of its exceptions applies, a state DMV "shall not knowingly disclose or otherwise make available" "personal information" and "highly restricted personal information." §§ 2721(a)(1)-(2). "[P]ersonal information" is "information that identifies an individual, including [a]...driver identification number, name, address ..., [or] telephone number, ... but does not include information on vehicular accidents, driving violations, and driver's status." § 2725(3). "[H]ighly restricted personal

1

information" is defined as "an individual's photograph or image, social security number, [and] medical or disability information." § 2725(4). The DPPA makes it unlawful "for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title." § 2722(a). A person "who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains." § 2724(a).

The DPPA's disclosure ban is subject to 14 exceptions set forth in § 2721(b), for which personal information "may be disclosed." ….

On April 14, 2015 (amended on August 18, 2017 and September 22, 2017), Plaintiff Arnita Diamond (Diamond) filed a complaint alleging that Defendant Kimberly Hastie[1] (Hastie) unlawfully obtained, used and/or disclosed her personal information of Mobile, Alabama (email address) from motor vehicle records in violation of the *Drivers' Privacy Protection Act*, 18 U.S.C. § 2721, *et. seq.* (DPPA) (Count I) and in violation of her privacy rights under Title 42 U.S.C. § 1983 (Count II).  (Docs. 1, 28, 36 (amended)). Concerning the DPPA violations (Count I) Diamond alleges that:

> …During August 2013, Defendant Hastie, acting under color of the law, and in the course and scope of her employment, knowingly and under misinterpretation of federal law, authorized, directed, ratified, approved, acquiesced in, committed, or participated in, acts and practices in direct violation of the DPPA when she ordered an employee of the Mobile County License Commission to access Plaintiff['s]…Personal Information contained in motor vehicle records.
>
> Hastie ordered the employee to access motor vehicle records and gather the email addresses of all Mobile County residents who reside within the city limits and place that Personal Information onto an electronic storage device (a "thumb drive").
>
> Hastie then ordered that the Personal Information be provided to the campaign of a local political candidate. Non-parties Chad Tucker ("Tucker") and Strateco, LLC ("Strateco"), knowingly received the Personal Information and utilized it in order promote a local political candidate, a purpose not permitted under the DPPA.

(Doc. 36 at 5).   Diamond's' DPPA count (Count I) specifies that Hastie's "accessing, obtaining,

---

[1] Former License Commissioner of Mobile County, Alabama.

2

disclosing and/or using" Diamond's motor vehicle record violate Section 2724(a) of the DPPA. (Id. at 9).

Based on Hastie's conduct, Diamond's Complaint seeks -- per Section 2724(b)(1) -- liquidated damages of $2,500 per occurrence (each instance Hastie unlawfully obtained, used, and/or disclosed protected personal information); punitive damages; and attorneys' fees.[2] In Count II, with regard to Section 1983, Diamond alleges that she had a reasonable expectation of privacy as to the personal information provided to the Mobile County License Commission, and that Hastie deprived her of her rights to privacy as secured by the DPPA.[3] (Doc. 36 at 11). From this, Diamond claims attorneys' fees and costs. (Id. at 12). On summary judgment, Diamond seeks entry of judgment in her favor and against Hastie as to DPPA liability, damages (minimum statutory $2,500), and attorneys' fees (to be submitted at a later date).

## II.     Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Rule 56(c) provides as follows:

> *(c) Procedures*
> *(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only),

---

[2] The court may award--**(1)** actual damages, but not less than liquidated damages in the amount of $2,500; **(2)** punitive damages upon proof of willful or reckless disregard of the law; **(3)** reasonable attorneys' fees and other litigation costs reasonably incurred; and **(4)** such other preliminary and equitable relief as the court determines to be appropriate.

[3] Per Collier v. Dickinson, 477 F.3d 1306, 1310-1311 (11th Cir. 2007), the DPPA provides a statutory right to privacy of personal information enforceable separately under Section 1983.

>admissions, interrogatory answers, or other materials; or
>
>**(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
>***(2) Objection That a Fact Is Not Supported by Admissible Evidence.*** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
>***(3) Materials Not Cited.*** The court need consider only the cited materials, but it may consider other materials in the record.
>
>***(4) Affidavits or Declarations.*** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED.R.CIV.P. Rule 56(c).

The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). Generally,

>when the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial. In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party.

United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991) (citations and internal quotation marks omitted). The Eleventh Circuit has held that the burden of proof lies with

4

the plaintiff under the DPPA. Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King, & Stevens, P.A., 525 F.3d 1107, 1112 (11th Cir. 2008) ("In reading § 2724(a) and § 2721(b) together, we conclude that the DPPA is silent on which party carries the burden of proof and, as such, the burden is properly upon the plaintiff.").[4]

Once the moving party makes such a showing, the burden then shifts to the nonmoving party to produce evidence demonstrating a genuine issue for trial. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992).

**III.    Preclusion**

Diamond contends that summary judgment is due to be granted to her because Hastie is precluded from asserting that she did not violate the DPPA when she provided email addresses from the License Commissioner's database to the mayoral campaign (referencing the criminal conviction and affirmed appeal -- United States v. Hastie, 854 F.3d 1298 (11th Cir. 2017)). As set forth in Blohm v. Bradley, 821 F. Supp. 1451, 1454 (S.D. Ala. 1993), *aff'd*, 7 F.3d 241 (11th Cir. 1993) (internal footnotes omitted):

> The doctrine of collateral estoppel was succinctly defined by the Eleventh Circuit in *Hercules Carriers, Inc. v. Claimant Florida Dept. of* Transp., 768 F.2d 1558 (11th Cir.1985):
>
>> Under the doctrine of collateral estoppel, the resolution by a court of an issue of fact or law necessary to its judgment precludes the

---

[4] See also Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King & Stevens, P.A., 2006 WL 8431100, *5 (S.D. Fla. Nov. 7, 2006), *aff'd*, 525 F.3d 1107 (11th Cir. 2008) (noting that, in a DPPA action, it is the plaintiff that bears the burden of proof at trial).

> relitigation of that issue in a subsequent suit based on a different cause of action involving a party to the prior litigation.
>
> *Id*. at 1578 (footnote omitted). There are four prerequisites to the application of collateral estoppel: (1) the issue at stake must be identical to the one involved in the prior litigation; (2) the issue must have been actually litigated in the prior suit; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding. [ ] *In re: McWhorter,* 887 F.2d 1564, 1566 (11th Cir.1989).

Moreover, the Eleventh Circuit has explained that:

> Collateral estoppel bars a defendant who is convicted in a criminal trial from contesting this conviction in a subsequent civil action with respect to issues necessarily decided in the criminal trial. *See Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 157…(1963); *In re Bilzerian,* 153 F.3d 1278, 1281 (11th Cir.1998) (defendant convicted of securities fraud was collaterally estopped from challenging issues litigated in criminal trial in subsequent civil action brought by the SEC). For collateral estoppel to apply, the issue in question must be "identical in both the prior and current action," the issue must have been "actually litigated" in the criminal trial, the determination of the issue must have been "critical and necessary to the judgment in the prior action" and the burden of persuasion in the subsequent action cannot be "significantly heavier." *In re Bilzerian*, 153 F.3d at 1281.

<u>United States. v. Jean-Baptiste</u>, 395 F.3d 1190, 1194-1195 (11th Cir. 2005).

Diamond contends that Hastie is precluded from arguing or presenting evidence that she did not violate the DPPA when she instructed a License Commission employee to download the email addresses of thousands of Mobile residents and then provided those email addresses to a local political campaign.  From this, Diamond contends that Hastie is barred from arguing non-liability for the DPPA claims asserted by Diamond.

In the criminal case, Hastie was convicted of violating the DPPA "by disclosing the email addresses collected by the License Commission to a political consulting firm to tout Hastie's support for a mayoral candidate."  <u>Hastie</u>, 854 F.3d at 1300.  And as determined as a matter of law

in the criminal case, email addresses constitute "personal information" under DPPA. United States v. Hastie, 854 F.3d 1298, 1303-1304 (11th Cir. 2017) (An email address is personal information protected by the DPPA because it is information that identifies an individual).

The Court is satisfied that preclusion applies as to all the issues regarding whether Hastie violated the DPPA by disclosing the email addresses to the mayoral campaign. Specifically, the DPPA violation of which Hastie was convicted is the same violation which forms the bases of Diamond's complaint alleging a statutory violation and a section 1983 claim. Moreover, whether Hastie violated the DPPA and the surrounding issues of the applicability of the DPPA were critical/necessary to the judgment in the prior criminal action. And, Hastie had a full/fair opportunity to litigate whether she violated the DPPA in the prior action. Thus, Hastie is precluded from arguing that her actions in disclosing the email addresses to the mayoral campaign did not violate the DPPA. This includes arguing that any of the exceptions apply to her conduct.

## IV.    FINDINGS OF FACT AND CONCLUSIONS OF LAW

However, Hastie is not precluded from challenging Diamond's individual DPPA claim, i.e., whether Diamond's email was among those disclosed. In that regard, Diamond presents the following evidence that her email address was disclosed by Hastie to the mayoral campaign: 1) testimony of Bray, an employee of the License Commission, that at Hastie's request he retrieve the emails of City of Mobile licensed drivers from the License Commission database; 2) Bray's testimony that the emails in the database were obtained from the licensed drivers of Mobile County; 3) Hastie's admission that she directed emails be retrieved from the License Commission database and that she provided the emails to the mayoral campaign; 4) Diamond's statement that she was a resident of the City of Mobile and a licensed driver who had given her email address to

the License Commission during the relevant time period; and 5) a copy of the email she received from Hastie on behalf of the mayoral campaign, soon after the emails were obtained from the database.

In rebuttal, Hastie contends that issues of fact preclude summary judgment. In support, Hastie points to the fact that the thumb drive (containing the emails) that was provide to the mayoral campaign is missing. From this, Hastie contends that Diamond cannot prove that her specific email was improperly obtained or disclosed.[5] This contention does not establish the existence of genuine issues of material fact. The thumb drive is not essential to proving Diamond's individual claim. Diamond has presented circumstantial evidence, as outlined above, that her email was disclosed to the mayoral campaign by Hastie. This evidence has not been rebutted or challenged.

Hastie next attacks Bray's credibility in an attempt to challenge that she knowingly violated the DPPA. Specifically, Hastie points to Bray's allegedly inconsistent statements as to whether he told Hastie implicitly or explicitly that the retrieval of the emails would be illegal. However, as explained *supra,* Hastie has already been found to have knowingly violated the DPPA and is thus precluded from re-litigating this issue.[6]

---

[5] Hastie also relies on her deposition testimony, wherein she states that she was told that the email addresses from the License Commission may not be used to send out her endorsement email. This reference appears to be an attempt to create doubt as to whether the obtained emails were ever disclosed. However, this evidence is hearsay and would not be admissible at trial to prove the truth of the matter asserted. Also, as previously explained, Hastie is precluded from relitigating whether the emails were disclosed to the campaign.

[6] Hastie, 854 F.3d at 1305:

Although Hastie argues that the rule of lenity should apply because she did not know email addresses were covered by the Act, "ignorance of the law is typically no defense to criminal prosecution," *McFadden v. United States*, ––– U.S. –––, 135 S.Ct. 2298, 2304 (2015). The Act says that a defendant must knowingly disclose (as opposed to negligently misplace) the information, but the Act does not require knowledge that such disclosure is illegal. *Cf. id.* And in any event, the government offered evidence that Hastie was aware of the prohibition because she attempted to hide

8

Hastie also characterizes Diamond's summary judgment as "entirely rel[ying] on Bray's testimony[,]" adding that "the mere fact that Diamond claims that she received the e-mail message from Hastie does not establish that Diamond's e-mail address was on the thumb drive[]" and "[w]ithout his [Bray's] testimony about what he allegedly did to create the thumb drive or the re-created list[]", her claims fail. (Doc. 116 at 9-10).   Hastie is incorrect that Diamond's claim fails if Bray does not testify or he is found incredible.

As a matter of law Hastie violated the DPPA when she directed that emails be retrieved from the License Commission database to be used for emailing an endorsement in the mayoral campaign.  And the following facts are supported by Diamond's submissions, but unconverted by Hastie:

1) Hastie disclosed a list of emails from the License Commission database to the Stimpson mayoral campaign so that the campaign could use the email list to send Hastie's endorsement letter.  (Doc. 108, exhibit 1)

2) Thereafter, Diamond received an unsolicited email from the Stimpson mayoral campaign that contained an endorsement letter from Hastie.  (Doc. 108, exhibit 3)

3) Prior to receiving this email, Diamond gave her email address to the License Commission to renew her license. (Doc. 108, exhibit 3)

This evidence is sufficient to sustain Diamond's burden to prove by a preponderance of the evidence that Diamond's email was disclosed by Hastie in violation of the DPPA.  Hastie offers no evidence in contradiction.  Accordingly, summary judgment is due to be granted on Diamond's

---

the source of the emails and later lied about her behavior. Our construction of the statute is broader than Hastie's interpretation, but "[t]he mere possibility of articulating a narrower construction ... does not by itself make the rule of lenity applicable," *Smith v. United States*, 508 U.S. 223, 239, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993).

claim that Hastie disclosed Diamond's email in violation of the DPPA.

V. **Qualified Immunity**

Hastie contends that she is entitled to qualified immunity for the individual capacity claims against her. She alleges that she was acting within her discretionary authority as the License Commissioner in collecting and disseminating information from motor vehicle records and that her conduct did not violate clearly established law at the time. (Doc. 116 at 2).

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'…'The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law.'" Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) and Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002)).

"Under the well-defined qualified immunity framework, a 'public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" Terrell v. Smith, 668 F.3d 1244, 1250 (11th Cir. 2012). To act within the scope of discretionary authority means that "the actions were (1) undertaken pursuant to the performance of [the official's] duties and (2) within the scope of [his] authority." Lenz v. Winburn, 51 F.3d 1540, 1545 (11th Cir. 1995) (quotation marks and citations omitted). As the Court explained in Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1282 (11th Cir. 1998):

> The inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act. Framed that way, the inquiry is no more than an "untenable" tautology. *See Sims*

>     *v. Metropolitan Dade County,* 972 F.2d 1230, 1236 (11th Cir.1992); *Shechter v. Comptroller of New York,* 79 F.3d 265, 269 (2d Cir.1996). "Instead, a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties. The scope of immunity 'should be determined by the relation of the [injury] complained of to the duties entrusted to the officer.'" *In re Allen,* 106 F.3d at 594 (quoting *Doe v. McMillan,* 412 U.S. 306, 319–20, 93 S.Ct. 2018, 2028, 36 L.Ed.2d 912 (1973)).

Id. at 1282.

Hastie was acting as the License Commissioner when she directed an employee to retrieve the email addresses of the licensed drivers. She had the discretion to direct employees and she had the authority to access personal information of licensed drivers. "Accordingly, the acts complained of—the improper release of the information—were 'within, or reasonably related to, the outer perimeter of [Defendants'] discretionary duties.'" Collier v. Dickinson, 477 F.3d 1306, 1308 fn.1 (11th Cir. 2007) (citation omitted) (Defendants who were high level executive officials at the motor vehicle department were acting within their discretionary duties when they sold motor vehicle record information to mass marketers.)

>     "'Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate.'...The Supreme Court has set forth a two-part test for the qualified immunity analysis. 'The threshold inquiry a court must undertake in a qualified immunity analysis is whether [the] plaintiff's allegations, if true, establish a constitutional [or statutory] violation.' *Hope v. Pelzer,* 536 U.S. 730…(2002) (citing *Saucier v. Katz,* 533 U.S. 194, 201…(2001)). [ ] If a constitutional [or statutory] right would have been violated under the plaintiff's version of the facts, "the next, sequential step is to ask whether the right was clearly established."' Id. at 1346-1347 (footnote omitted). As detailed in Polion v. City of Greensboro, 26 F.Supp.3d 1197, 1221 (S.D. Ala. 2014):
>
>     To be clearly established, "pre-existing law must dictate, that is truly compel (not just

suggest or allow or raise a question about), the conclusion for every like situated reasonable government agent that what the defendant is doing violates federal law in the circumstances." *Lassiter v. Alabama A&M University*, 28 F.3d 1146, 1150 (11th Cir.1994) (en banc). "The relevant, dispositive inquiry in determining whether a right is clearly established…"the salient question ... is whether the state of the law ... gave the [defendants] fair warning that their alleged [conduct] was unconstitutional." ….

It is within a court's discretion "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236 (2001).

In Collier v. Dickinson, 477 F.3d 1306, 1311-1312 (11th Cir. 2007) (footnote omitted), where state officials were selling driver records to third-party mass marketers without the consent of the drivers, the Court held:

> We find that the plain language of the statute and the case law gave clear notice to Defendants that releasing the information in question violated federal law. The words of the DPPA alone are "specific enough to establish clearly the law applicable to particular conduct and circumstances and to overcome qualified immunity." *Vinyard v. Wilson*, 311 F.3d 1340, 1350 (11th Cir.2002) (holding that statutory language alone, even in the "total absence of case law" can be sufficient to provide fair notice).
>
> Moreover, the case law defining the reach of the DPPA gave fair notice to Defendants….. *Reno v. Condon*, 528 U.S. 141, 144–45….(2000) (emphasis added) (citations omitted). The case law defining the statute's scope could be no clearer. [ ] We find the statutory right to privacy in motor vehicle record information was clearly established at the time of Defendants' alleged conduct, giving them fair notice that their alleged conduct violated federal law.

But, as explained in Watts v. City of Miami, 679 F. App'x 806 (11th Cir. 2017), "'[o]bvious clarity cases are 'rare' and present a 'narrow exception' to the general rule of qualified immunity.' To fall into this category, a prohibition must be so clear that "no reasonable officer could have believed that [the Defendants'] actions were legal."' Id. at 809 (citations omitted).

Diamond's statutory right not to have her personal information (including her email)

disclosed by the License Commissioner was clearly established. Indeed, the Eleventh Circuit has previously determined that the DPPA statute was sufficiently clear on this point and gave fair notice to Hastie such that she was held criminally responsible for her actions. Specifically, the Court stated that the statute was not ambiguous and cited with approval the Seventh Circuit's determination that the DPPA "was clear and precise enough to give a person of ordinary intelligence fair notice about what is required of him." United States v. Hastie, 854 F.3d 1298, 1305 (11th Cir. 2017) (quoting Dahlstrom v. Sun-Time Media, LLC, 777 F.3d 937, 946 (7th Cir. 2015)). If Hastie could be held criminally responsible for her actions because the DPPA was "clear and precise enough", the Court is unable to state that she is entitled to qualified immunity because the illegality of her actions was not clearly established. As such, the Court finds that Hastie is not entitled to qualified immunity.

## VI.   Conclusion

The court's findings apply to both the statutory violation of the DPPA and the Section 1983 claim. Accordingly, it is **ORDERED** Diamond's motion for summary judgment (Doc. 108) is **GRANTED as to both claims**.

## VII.   DAMAGES AND ATTORNEY FEES

**Whether punitive damages should be awarded is reserved for trial. This issue will be discussed at the pre-trial conference on June 20, 2019 at 2:00 p.m.**

**DONE** and **ORDERED** this the **18th** day of **June 2019.**

/s/Kristi K. DuBose
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**